**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

No. 21-2323

───────────

SIOBHAN MORROW, individually and on behalf of all others similarly situated;
TRACEE LE FLORE, individually and on behalf of all others similarly situated,

Plaintiffs - Appellants,

v.

NAVY FEDERAL CREDIT UNION,

Defendant - Appellee.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria. Liam O'Grady, Senior District Judge. (1:21−cv−00722−LO−IDD)

───────────

Argued: May 4, 2022                                              Decided: July 7, 2022

───────────

Before THACKER, HARRIS, and QUATTLEBAUM, Circuit Judges.

───────────

Vacated and remanded by unpublished opinion. Judge Quattlebaum wrote the opinion in
which Judge Thacker and Judge Harris joined.

───────────

**ARGUED:** Sophia Goren Gold, KALIELGOLD PLLC, Berkeley, California, for
Appellants. Michael Julian Gottlieb, WILLKIE FARR & GALLAGHER LLP,
Washington, D.C., for Appellee. **ON BRIEF:** Jason H. Alperstein, Jonathan M. Streisfeld,
KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT, Fort Lauderdale,
Florida; David M. Wilkerson, THE VAN WINKLE FIRM, Asheville, North Carolina, for
Appellants. Nicholas Reddick, San Francisco, California, Meryl Conant Governski, Aaron
E. Nathan, WILLKIE FARR & GALLAGHER LLP, Washington, D.C., for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

In this appeal, we review an order dismissing a breach of contract claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court determined that the contract's clear and unambiguous terms precluded relief. But we conclude the terms were in fact capable of more than one reasonable meaning. Thus, we vacate and remand.

## I.

Using their Navy Federal Credit Union ("Navy Federal") debit cards, Siobhan Morrow purchased clothing from Chicme.com while in San Diego, California and Tracee Le Flore made multiple payments to Freelancer.com from Memphis, Tennessee. Both merchants are based in foreign countries.

The contractual documents related to Navy Federal debit cards include a Debit Card Disclosure Agreement and a Schedule of Fees and Charges ("Fee Schedule"). Under the heading "Foreign/International Transactions," the Debit Card Disclosure Agreement specifies that "Transactions using your DC [Debit Card] made in foreign countries will post to your account in U.S. dollars and will be charged an International Service Assessment Fee. This fee will be identified as a separate transaction on your statement." J.A. 24. Subpart (a) of that section provides that "Transactions *made in foreign countries* will be charged 1.0% of the transaction amount." J.A. 24 (emphasis added). Under the heading "International Transactions—Non-Navy Federal ATMs and Point-of-Sale," the Fee Schedule provides "Point-of-sale and ATM transactions made in foreign countries 1% per transaction." J.A. 22.

Navy Federal assessed 1% foreign transaction fees ("FTFs") on Morrow's and Le Flore's online transactions. In response, Morrow and Le Flore brought a class action lawsuit complaining that Navy Federal's imposition of FTFs breached its contracts with account holders. Asserting a single cause of action for "breach of contract including the covenant of good faith and fair dealing," they alleged that Navy Federal breached promises in the contracts when it charged FTFs on online transactions made while they were physically in the United States. *See* J.A.16. Morrow and Le Flore claimed the contracts only allowed FTFs to be assessed  "when an accountholder uses his or her debit card in a foreign country." J.A. 7. To put it differently, they alleged that transactions made while purchasers, like themselves, were physically in the United States, even to foreign merchants, did not qualify.[1]

Navy Federal moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the district court granted that motion. It argued that the phrase "transactions made in foreign countries" as set forth in the contracts unambiguously referred to the location of the merchant. The district court agreed. It held that, under the contractual language, any time

---

[1] This is not the first lawsuit these plaintiffs have brought against Navy Federal raising these allegations. Morrow sued in the Southern District of California but voluntarily dismissed her claims. Le Flore and Maria Hart sued in the District of South Carolina. After Le Flore voluntarily dismissed her claims without prejudice, the South Carolina district court dismissed Hart's claims filed on behalf of a national class but otherwise denied Navy Federal's motion to dismiss, finding that Hart's complaint adequately alleged the existence of a legally enforceable obligation and its plausible breach. *Hart v. Navy Fed. Credit Union*, No. CV 2:21-44-RMG, 2021 WL 2418459 (D.S.C. June 11, 2021). Here, the district court concluded the ruling of the South Carolina district court had no offensive preclusive effect as the South Carolina district court did not make a definitive resolution that the contract was ambiguous. Morrow and Le Flore do not appeal this aspect of the district court's ruling, thus we do not address the issue.

Morrow or Le Flore used their debit card to make an online purchase with a merchant located outside the United States, the "point-of-sale" for that transaction was a foreign country. *See* J.A. 205. Accordingly, the district court held that assessing FTFs on such transactions complied with the contract's plain language.

Morrow and Le Flore appeal that ruling. We have jurisdiction to review the district court's dismissal of the complaint with prejudice pursuant to 28 U.S.C. § 1291.

## II.

### A.

"We review de novo the district court's grant of [the defendant's] motion to dismiss." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). To survive the motion, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). We must take the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012). But that deference is not accorded to the legal conclusions stated in a complaint. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). Mere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive a motion to dismiss brought pursuant to Rule 12(b)(6). *Id.*

### B.

To determine whether Morrow and Le Flore have adequately pled a breach of contract claim, we must consider if the factual allegations reasonably state a claim based

5

on the language of the alleged contract. In reviewing an order dismissing a complaint, we review not only the allegations of the complaint itself but also "consider documents that are explicitly incorporated into the complaint by reference" and that are "attached to the complaint as exhibits." *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016).

The parties agree that, under the contract documents, Virginia law applies. Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 619 (Va. 2004). The district court concluded that the FTFs were properly assessed under the contract's plain language. Thus, it held, even accepting the factual allegations of the complaint as true,  Navy Federal did not breach the contract. In reviewing that decision, we must decide whether the phrases "transactions made in foreign countries" from the Debit Card Disclosure Agreement and "Point-of-sale and ATM transactions made in foreign countries" from the Fee Schedule are clear and unambiguous. *See Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 726 (4th Cir. 2000) (reviewing the ambiguity of the contract de novo); *Va. Fuel Corp. v. Lambert Coal Co.*, 781 S.E.2d 162, 166 (Va. 2016) (same).

Virginia follows the "plain meaning" rule. *See Waynesboro Vill., L.L.C. v. BMC Props.*, 496 S.E.2d 64, 67 (Va. 1998). That means "[t]he language used is to be taken in its ordinary signification," and if the language is plain, it "must be given effect accordingly." *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984) (internal quotation marks omitted); *see*

*also Video Zone, Inc. v. KF & F Props., L.C.*, 594 S.E.2d 921, 924 (Va. 2004). And if the agreement is "complete on its face and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Lerner v. Gudelsky Co.*, 334 S.E.2d 579, 584 (Va. 1985). But an "ambiguity exists when the contract's language is of doubtful import, is susceptible of being understood in more than one way or of having more than one meaning, or refers to two or more things at the same time." *Pocahontas Min. L.L.C. v. CNX Gas Co., LLC*, 666 S.E.2d 527, 531 (Va. 2008). Whether a contract is ambiguous is an issue of law, and "[a] court's primary focus in considering disputed contractual language is to determine the parties' intention, which should be ascertained, whenever possible, from the language the parties employed in their agreement." *Id.* Also, "[i]n determining whether disputed contractual terms are ambiguous, we consider the words employed by the parties in accordance with their usual, ordinary, and popular meaning." *Id.*

Of course, the "mere fact that terms of a contract are in dispute is not evidence that the language is not clear and explicit and requires extrinsic evidence to aid in its construction." *Galloway Corp. v. S.B. Ballad Constr. Co.*, 464 S.E.2d 349, 354 (Va. 1995). Virginia law cautions "[t]he fact that one may hypothesize opposing interpretations' of the same contractual provision does 'not necessarily render the contract ambiguous." *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 356 (Va. 2019) (internal quotation marks omitted).

C.

Guided by the legal principles outlined above, we turn to the parties' arguments on appeal. Morrow and Le Flore argue that the district court erred in dismissing their complaint. They insist that the complaint plausibly alleges a claim for breach of contract. According to those allegations, the Debit Card Disclosure Agreement and the Fee Schedule constitute a contract between Navy Federal and its account holders that expressly bars the assessment of FTFs on online debit card transactions made while the customers are physically in the United States. They allege that Navy Federal represented that FTFs would be assessed only on point-of-sale transactions "made in foreign countries." Appellants' Br. 10. They contend that the plain language of the contract means that a FTF can be assessed only if the account holder is physically located in a foreign country. Alternatively, they maintain that the relevant contractual terms are ambiguous, which also means the district court's dismissal of their complaint was improper.

Navy Federal insists the district court properly dismissed the complaint because Morrow and Le Flore's allegations are inconsistent with the unambiguous language of the alleged contract. In its view, the Debit Card Disclosure Agreement, which has no point-of-

sale language, is the "first and most important Account Document." Appellee's Br. 6.[2]
According to Navy Federal, "transactions made in foreign countries" unambiguously refers
to the seller's location. Navy Federal also contends that "made in foreign countries" should
be interpreted in the context of the rest of the contractual provisions of the Debit Card
Disclosure Agreement, which indicates that FTFs are properly charged based on the seller's
location.[3] And Navy Federal maintains the Fee Schedule's "point-of-sale" language

---

[2] Before the district court Navy Federal "d[id] not deny that there is a contract
between the parties but d[id] dispute that the 'Debit Card Disclosure' is a legally binding
agreement between the parties." J.A. 202. Without deciding if they created a binding
contract, the district court held the Debit Card Disclosure Agreement and the Fee Schedule
were unambiguous and should be construed by the plain meaning of their terms. At oral
argument, Navy Federal clarified its position by arguing that the Debit Card Disclosure
Agreement is the relevant and operative agreement between the parties. Oral Argument at
31:30-34:21.

[3] Alternatively, Navy Federal points to a different document, the
"Membership/Savings/Checking Disclosure Statement" to support its position. The
complaint included a footnote which alleged that, in addition to the Fee Schedule, the
Membership/Savings/Checking Disclosure Statement is also incorporated into the Navy
Federal Account Documents. Morrow and Le Flore neither attached the
Membership/Savings/Checking Disclosure Statement to the complaint nor did they raise
the document with the district court below. But Navy Federal insists that considering the
Fee Schedule requires considering the Membership/Savings/Checking Disclosure
Statement too, since according to Navy Federal, the Fee Schedule becomes a binding
agreement only because the Membership/Savings/Checking Disclosure Statement
incorporates the Fee Schedule by reference. And if so, the Membership/Savings/Checking
Disclosure Statement contradicts Morrow and Le Flore's interpretation of "point-of-sale."
*See* Appellee's Br. 3.

The district court did not consider the Membership/Savings/Checking Disclosure
Statement as the parties did not bring it to the court's attention. Since this issue was not
raised before the district court, we decline to consider it now. *See Volvo Const. Equip. N.
Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 603 (4th Cir. 2004). We limit our review
to the complaint including the Debit Card Disclosure Agreement and the Fee Schedule
which were attached to it and explicitly relied upon in the complaint.

necessarily refers to the seller's location as the place where the product is sold. Based on this contract language, Navy Federal argues that Morrow and Le Flore's complaint fails to plausibly allege a claim for breach of contract and that the district court's order of dismissal should be affirmed.

Thus, as framed by the parties, the question before us is narrow. At the Rule 12(b)(6) stage of the case, do the alleged contractual documents clearly and unambiguously indicate that the location of the merchant determines whether a transaction is made in a foreign country? In our view, the answer is no. On this issue, we conclude that the language from the Debit Card Disclosure Agreement and Fee Schedule are susceptible to different interpretations.

## 1.

As an initial matter, the phrase "transactions made in foreign countries" is not defined in the Debit Card Disclosure Agreement. And without a definition, in this context, its plain meaning is not clear. To be sure, the merchants in the transactions were located outside the United States. But that does not necessarily mean that the transactions were "made" in a foreign country. The referenced transactions also required certain actions by Morrow and Le Flore who were physically located in the United States. The language from the contracts simply does not clarify whether the location of the account holder or the seller determines whether the transactions are made in foreign countries.

The Fee Schedule's "Point-of-sale and ATM transactions made in foreign countries" language does not clear things up. That phrase is likewise not defined in the agreements. And while "point-of-sale" arguably refers to the merchant's location, the

language could reasonably be interpreted as applying to a traditional in-person transaction rather than an online one. Indeed, "point-of-sale" is linked to "ATM transactions" which are primarily carried out in person.[4] In an online context, the point-of-sale is not so clear. As the Seventh Circuit asked: "Where is the point of sale for such a purchase—the consumer's computer? the vendor's headquarters? the vendor's server? cyberspace generally?" *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 800 (7th Cir. 2010).

## 2.

Both cite dictionary definitions in support of their interpretations. Regarding the word "made," Morrow and Le Flore turn to Merriam-Webster's definition of "make," for an ordinary meaning. They highlight definitions which suggest that made means "to cause to happen or be experienced by someone; to cause to exist, occur, or appear; to enact or establish; to execute in an appropriate manner; to cause to be or become; to carry out (an action indicated or implied by the object)." *See* Appellant's Br. 20–21. For its part, Navy Federal also relies on definitions defining "make" as "to cause to happen." Appellee's Br. 22–23; *see also Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 258–59 (4th Cir. 2013) (citing the Merriam-Webster and Oxford English dictionaries that

---

[4] To this point, Morrow and Le Flore ask us to consider the Fair and Accurate Credit Transactions Act, which provides for limited printing of card numbers for printed receipts at the "point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). Specifically, they note that courts have held that the statute's phrasing means that the statute applies only to in-person transactions and not to transactions made online. *See Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1210 (9th Cir. 2011) ("'Point of sale' is a term of art that applies to 'face-to-face transactions that take place in a 'bricks-and-mortar' store or some comparable physical location at which the consumer is handed a receipt.'" (quoting *Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794, 800 (7th Cir. 2010))).

indicate to "make means to cause to happen, to bring into being by forming, shaping, or altering material, to produce (a material thing) or to construct or assemble (internal quotation marks omitted)); *Make*, *Black's Law Dictionary* (11th ed. 2019) (defining "make" as to "cause (something) to exist," "enact (something)," "acquire (something)," or "legally perform, as by executing, signing, or delivering (a document)").[5]

We need not decide which definition of "made" or "make" is the most appropriate because neither resolves whether Morrow and Le Flore's interpretation or Navy Federal's interpretation is right. Take for example, "to cause to happen." This definition merely begs the question. Does the buyer's click on a screen cause the transaction to occur? Or is it the seller's response to the buyer? What about Navy Federal's indication that the account has sufficient funds? In the context of an online transaction, is the transaction even made in one of these physical locations? We cannot tell from the contractual language.

Morrow and Le Flore also look to definitions for "point-of-sale," a term from the Fee Schedule. They cite to Merriam-Webster, which defines "point-of-sale" as "of or relating to the place (such as a check-out counter) where an item is purchased." *See* Point-of-Sale (first known use 1936), Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/point-of-sale (last visited June 16, 2022). And Navy Federal claims the ordinary meaning of "point-of-sale" is "[t]he place or shop where a product is

---

[5] Albeit in a different context but aptly proving the point here, the Supreme Court has expressed: "As commonly defined, 'made' has several alternative meanings, none of which is entirely free from ambiguity." *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (citing Webster's Ninth New Collegiate Dictionary 718–19 (1991), which defined "to make" as "to cause to happen," "to cause to exist, occur or appear," "to lay out and construct" and "to cause to act in a certain way").

sold," relying on Black's Law Dictionary. *Point of Sale*, *Black's Law Dictionary* (11th ed. 2019).

While the definitions of "point-of-sale" arguably trend more in the direction of the seller's location than the buyer's, they still seem to refer to traditional in-person transactions, not online transactions. As described above, the question is more complicated in the online context.

3.

Navy Federal contends that even if "made in foreign countries" and "point-of-sale" are ambiguous, any ambiguity is resolved by the contractual context of those provisions. Specifically, Navy Federal refers to the Debit Card Disclosure Agreement's explanation of how a transaction is authorized and processed when a customer uses his or her debit card to make a purchase. For example, paragraph three of the Debit Card Disclosure Agreement states that "[o]nce a transaction is authorized, a temporary hold is placed on your account for the amount of the purchase." J.A. 24 ¶ 3.c. According to Navy Federal, this language supports its position that the agreement focuses on the merchant's location and where the card is accepted, regardless of the purchaser's location. Perhaps. But that language also adds another possibility as to where the transaction was made—the bank's authorization and processing of the transaction. And where in the world did that take place? At the bank's physical location or somewhere in the cloud? While perhaps relevant, this language does not resolve the ambiguity.

In summary, the contracts could have been drafted to clearly explain whether online transactions were "made in foreign countries" if they were between account holders

13

physically in the United States and foreign sellers. But they were not. As drafted, the contracts are capable of more than one reasonable interpretation. Thus, under Virginia law, the language is ambiguous. Finding ambiguity, we vacate the district court's order and remand for further proceedings consistent with this opinion. Although whether the language of a contract is ambiguous is a question of law, the resolution of that ambiguity is a question of fact. "[W]hen a contract is ambiguous it is necessary to resort to parol evidence to ascertain the intention of the parties." *Online Res. Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. 2013); *see also Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("After our required *de novo* review, we find that the contract is not free from ambiguity and that the district court erred in granting [the] motion to dismiss.").[6]

But as noted above, our resolution is narrow. It is necessarily limited by the procedural posture of the case, the focused question presented to us and the specific documents described above.

---

[6] The complaint refers to foreign transaction fee disclosures from other banks which involve more express language referencing the merchant's location as the dispositive location. That evidence, however, is parol evidence. We leave to the district court what evidence it should consider to determine the parties' intent.

III.

Because the contract language here is capable of more than one reasonable meaning, one of which is supported by the allegations of the complaint, we vacate the judgment of the district court and remand the case for further proceedings.

*VACATED AND REMANDED*