IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SIOBHAN MORROW and TRACEE LE FLORE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>                    Defendant. | Case No. 1:21-cv-722-MSN-LRV |
| MARIA HART and TRACEE LE FLORE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>                    Defendant. | Case No. 1:22-cv-844-MSN- LRV |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## I.   INTRODUCTION

Plaintiffs[1] respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. The Settlement—which is the result of hard-fought litigation and arm's length negotiations between experienced counsel facilitated by United States Magistrate Judge Lindsey R. Vaala—provides substantial monetary relief, including a $5,500,000.00 Settlement Fund. The Settlement is an excellent recovery considering the litigation risks. The Settlement terms are well within the range of reasonableness and are consistent with applicable law. The Settlement satisfies all Fourth Circuit criteria for Preliminary Approval for fairness, adequacy, and reasonableness.

Accordingly, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class; (2) appoint Plaintiffs as Class Representatives; (3) appoint counsel listed in paragraph 40 of the Agreement as Class Counsel; (4) preliminarily approve the Settlement; (5) approve the Notice Program and Notices and direct that Notice be sent to the Settlement Class members; (6) approve the Claim Form and Claims Process; (7) order the Agreement's opt-out and objection procedures; (8) appoint the Settlement Administrator; (9) stay all deadlines in the Action pending Final Approval of the Settlement; and (10) set a date for the Final Approval Hearing.

## II.   BACKGROUND

### A.   Facts Alleged in the Complaint

Plaintiffs allege Navy Federal improperly charged foreign transaction fees, also known as ISA Fees, on debit card transactions that Accountholders initiated while in the United States throughout the Class Period. *See generally* Virginia Action, ECF No. 1; South Carolina Action,

---

[1] The capitalized terms in this Memorandum have the same meaning as the capitalized terms in the Class Action Settlement Agreement, attached as ***Exhibit A***.

1

ECF No. 1, 12; California Action ECF No. 1. Plaintiffs allege Navy Federal breached its uniform agreement and the implied covenant of good faith and fair dealing when charging these challenged ISA Fees, which according to Plaintiffs' interpretation, only permitted ISA Fees on transactions initiated while the Accountholder was physically located abroad. *Id.* Navy Federal denies its ISA Fee assessment practices breach its contract or violate the law and will continue to do so if this case proceeds to trial.

**B.      Procedural Background and Settlement Negotiations**

On August 21, 2020, Plaintiff Siobhan Morrow, a California resident, filed suit against Navy Federal on behalf of a putative nationwide class of Navy Federal accountholders in the Southern District of California. *See* California Action, ECF No. 1. Plaintiff Morrow dismissed the California Action voluntarily on March 12, 2021.

On January 7, 2021, Plaintiff Maria Hart, a South Carolina citizen, and Plaintiff Tracee Le Flore, a Tennessee citizen, filed a similar suit against Navy Federal on behalf of a putative nationwide class of Navy Federal accountholders in the District of South Carolina. *See* South Carolina Action, ECF No. 1. Navy Federal moved to dismiss the South Carolina Action on April 28, 2021. *Id.*, ECF Nos. 12, 19. Besides arguing failure to state a cause of action, Navy Federal argued the court lacked personal jurisdiction over Plaintiff Le Flore's claims and that South Carolina's "door closing statute" barred the court from presiding over nationwide class claims. *Id.*, ECF No. 19-1. Plaintiff Le Flore voluntarily dismissed her claims without prejudice on May 26, 2021. *Id.*, ECF No. 22 at 1 n. 1; *Id.* ECF No. 23. On June 11, 2021, the court denied dismissal as to Plaintiff Hart's claim for the putative South Carolina class under the contract's governing Virginia law but dismissed the putative nationwide class allegations. *Id.*, ECF No. 28.

Thereafter, on June 15, 2021, Plaintiffs Morrow and Le Flore filed this Virginia Action on behalf of a nationwide class, also challenging the ISA Fees. *See* Virginia Action, ECF No. 1. On

August 27, 2021, Navy Federal moved to dismiss, arguing the contract unambiguously permitted it to charge ISA Fees on transactions with foreign merchants initiated while the cardholder was physically located in the United States. After briefing, on October 27, 2021, the Court dismissed the Virginia Action with prejudice. ECF No. 33. On November 24, 2021, Plaintiffs appealed to the Fourth Circuit. ECF No. 34. Following briefing and oral argument, on July 7, 2022, the Fourth Circuit vacated that decision, finding the contract ambiguous. *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676 (4th Cir. July 7, 2022).

Following the appeal, the Parties agreed to transfer the South Carolina Action and consolidate it with the Virginia Action. ECF No. 42. Thereafter, the Parties participated in extensive formal discovery. Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit B***, at ¶ 9. In the consolidated Action, Plaintiffs propounded two sets of interrogatories, one set of requests for admissions, and one set of document requests to Navy Federal. *Id.* In the South Carolina Action, before consolidation, Plaintiff Hart propounded one set of interrogatories, two sets of requests for admission, and one set of document requests. *Id.* Navy Federal produced approximately 53,000 pages of documents and extensive ISA Fee transaction data. *Id.* Navy Federal, in turn, propounded one set of interrogatories, one set of requests for admissions, and one set of document requests to each Plaintiff. *Id.* ¶ 10. Additionally, Plaintiff subpoenaed VISA DPS. ECF Nos. 111, 135, 136.

Plaintiffs took seven depositions, three of Navy Federal fact witnesses (including the corporate representative), three expert witnesses, and VISA DPS's corporate representative. Joint Decl. ¶ 11. Navy Federal took five depositions, one of each Plaintiff and two of Plaintiffs' damages expert witness. *Id.* ¶ 12. During discovery, on September 22, 2022, the Parties appeared for an unsuccessful settlement conference before Magistrate Judge Ivan D. Davis. *Id.* ¶ 14.

Towards the end of the fact discovery period, the Parties fully briefed Plaintiffs' motion for class certification. ECF Nos. 59-73, 78, 99-100. Navy Federal moved to exclude the testimony of Plaintiffs' damages expert, Arthur Olsen. ECF Nos. 79, 80, 82, 93, 101. Oral argument on those motions occurred on March 24, 2023. ECF No. 127. That day, the Court orally granted class certification and denied the motion to exclude. *Id.*; ECF No. 128. The Court's written order certifying a litigation class provided that Navy Federal "retains the right to seek de-certification" if, "at any point in the litigation, it becomes apparent that the now-adopted methodology is unable to accurately identify accountholders who should be members of the class and separate them from accountholders that should not or if the burden of managing that process begins to outweigh the benefits of allowing Plaintiffs to proceed as a class[.]" *Id.*; ECF No. 144. Navy Federal's subsequent motion to reconsider the class certification order was unsuccessful. ECF Nos. 140-144.

On April 24, 2023, Navy Federal petitioned the Fourth Circuit to appeal the class certification order under Fed. R. Civ. P. 23(f). *Navy Fed. Credit Union v. Morrow, et al.*, No. 23-165 (4th Cir.), ECF No. 2. Following briefing, on May 31, 2023, the petition was denied. *Id.*, ECF No. 24. Due to the unavailability of sufficient ISA Fee data, Plaintiffs moved unopposed to modify the certified litigation class definition's beginning date from January 7, 2016, to August 9, 2016. ECF Nos. 164, 165. Plaintiffs submitted a proposed certified litigation class notice plain, which the Court approved. ECF Nos. 166, 167.

The Parties also exchanged merits expert reports and thereafter took depositions of those experts. Plaintiffs submitted a merits report by Mr. Olsen. ECF No. 178-1. Navy Federal submitted a merits report by Dr. Elaine Reardon, ECF No. 173-1, and two rebuttal reports by Mr. David Alfaro and Mr. Stephen Mott. ECF Nos. 178-3, 178-4.

In compliance with the scheduling order, the Parties prepared for trial. In advance of the

July 20, 2023 Final Pretrial Conference, the Parties exchanged Rule 26(a)(3) disclosures, including Witness Lists and Exhibit Lists, and their objections to the latter. ECF Nos. 159, 160, 162, 168, 169, 184, 170, 187. The Parties drafted and filed a Stipulation of Uncontested Facts. ECF No. 163. The Court ordered a Settlement Conference before Judge Vaala, and partially adopted the Parties' Joint Proposed Scheduling Order, setting the remaining case deadlines, including for summary judgment motions, *Daubert* motions, and for a motion to decertify the class. *Id.*; ECF No. 167.

Shortly after, Navy Federal moved to decertify the class, including to argue Plaintiffs had not proffered a class-wide method by which to reliably identify the location of cardholders at the time the initiated debit card transactions for which ISA Fees were assessed, allegedly defeating the required Fed. R. Civ. P. 23(b)(3) predominance requirement and ascertainability. *Id.*, ECF. Nos. 174-175.  Navy Federal also moved to exclude Mr. Olsen's computation of class-wide damages, challenging the reliability of identifying cardholder location. *Id.*, ECF Nos. 176-177. Meanwhile, Plaintiffs moved to exclude Dr. Reardon, Navy Federal's proffered consumer survey expert. ECF Nos. 172, 173, 192, 193, 203. After these motions were fully briefed, ECF Nos. 174-178, 194-196, 204-206, they were argued on August 25, 2023, and taken under advisement. ECF No. 219.

On September 7, 2023, the Parties appeared at a settlement conference before Judge Vaala. The Parties made progress, but were unable to reach an agreement that same day. Joint Decl. ¶ 15. Over the next few days, the Parties continued to negotiate and eventually reached a settlement in principle. *Id.* Thus, on September 11, 2023, and September 12, 2023, the settlement conference continued, culminating in Judge Vaala suspending all pending deadlines for 45 days to allow for the preparation of the Agreement and filing of this Motion for Preliminary Approval. ECF No. 229. On September 13, 2023, the Parties jointly consented to have Judge Vaala conduct any and all further proceedings in the Action, and the Action has been so referred. ECF No. 230-231. The

deadline to file this Motion was extended by the Court. ECF Nos. 232-233.

## III.   SETTLEMENT TERMS

### A.   Settlement Class

The Settlement Class is defined as:

> [A]ll current and former Navy Federal Accountholders who were assessed at least one ISA Fee during the Class Period for purchases made while they were physically located in the United States.

*See* Agreement ¶ 79.[2] The Class Period is August 9, 2016, to March 24, 2023. *Id.* ¶ 41. Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members. *Id.* ¶ 79.

### B.   Settlement Benefits

The Settlement provides meaningful immediate relief to Settlement Class Members in the form of cash payments. Navy Federal has agreed to establish a non-reversionary $5,500,000.00 common cash Settlement Fund. *Id.* ¶ 84.

#### 1.   Cash Benefits

The $5,500,000.00 Settlement Fund will be used to pay Settlement Class Member Payments, Settlement Administration Costs, Court-approved attorneys' fees and costs to Class Counsel, and Court-approved Service Awards to the Class Representatives. *Id.* ¶ 90. Settlement Class Member Payments will be paid to Settlement Class Members who make Valid Claims. *Id.* ¶ 82. Specifically, Navy Federal will pay such claims as follows:

---

[2] This Settlement Class includes members of the certified litigation class that would have been sent notice pursuant to the notice plan the Court previously approved, and the Class Period matches the modified period Plaintiffs sought by unopposed motion following class certification. ECF Nos. 164-167.

*Base Settlement Class Member Payment Calculation.* All Settlement Class Members who submit a Valid Claim will be eligible to receive a $4.00 Base Settlement Class Member Payment. *Id.* ¶116. If there are not enough funds in the Net Settlement Fund to pay $4.00 to each Settlement Class Member with a Valid Claim, each Base Settlement Class Member Payment will be reduced *pro rata*. *Id.*

*Additional Settlement Class Member Payment Calculation.* If funds remain in the Net Settlement Fund after calculating the total Base Settlement Class Member Payments, the remainder of the Net Settlement Fund will be payable to Settlement Class Members who submitted Valid Claims *and* had more than $4.00 in Actual ISA Fee(s) during the Class Period as an Additional Settlement Class Member Payment. *Id.* ¶ 117. Provided there are sufficient funds remaining in the Net Settlement Fund, the Additional Settlement Class Member Payment will be the amount equal to (and no more than) each of their respective Actual ISA Fee(s) (as determined by the Settlement Class Transactional Data) subtracted by $4.00. *Id.* If there are insufficient funds to pay Settlement Class Members eligible for an Additional Settlement Class Member Payment the full amount of their respective Actual ISA Fee(s), the Additional Settlement Class Member Payments shall be reduced *pro rata* to exhaust the Net Settlement Fund. *Id.*

## 2.   The Claims Process

Settlement Class Members may submit a Claim Form either online through the Settlement Website or in hard copy through U.S. mail by sending the Claim Form to the Settlement Administrator no later than the Claims Deadline. *Id.* ¶ 38, 112. The Settlement Administrator will collect, review, de-duplicate, and assess each Claim Form to determine whether it is a Valid Claim. *Id.* ¶ 114. The Settlement Administrator will make the final determination as to a Claim's validity. *Id.* ¶ 115.

No later than 30 days after the Effective Date, the Settlement Administrator shall deliver

to the Parties a complete list of all Settlement Class Members who submitted Valid Claims, and then the Parties will deliver to the Settlement Administrator within 30 days a list that contains the Actual ISA Fee for each Settlement Class Member with a Valid Claim to allow for the calculation of each Settlement Class Member Payment. *Id.* ¶ 120. Electronic payments will be initiated by the Settlement Administrator. *Id.* ¶ 122.

The amount of the Net Settlement Fund attributable to undeliverable electronic payments or uncashed or returned checks sent by the Settlement Administrator will be held by the Settlement Administrator for up to one year from the date that the Settlement Administrator mails the first distribution check. *Id.* ¶ 123. After that period, this amount will be treated as Residual Funds. *Id.*

### C.    Disposition of Residual Funds

Subject to Court approval, within one year after the date the Settlement Administrator mails the first Settlement Class Member Payment, any Residual Funds will be distributed to No Plate Left Behind, a partnership between Navy Federal and Feeding America to reduce hunger for servicemembers, veterans, and their families, as a *cy pres* recipient. *Id.* ¶ 124. The Parties agree the distribution of any Residual Funds to the *cy pres* recipient is reasonable. *Id.* ¶ 125.

### D.    Settlement Administrator and Settlement Administration Costs

The proposed Settlement Administrator is Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a nationally recognized and experienced class action administrator. Joint Decl. ¶ 18. The Settlement Administrator will invoice Class Counsel for all Settlement Administration Costs, which on approval, shall be payable from the Settlement Fund. Agreement ¶ 98. The Settlement Administration Costs are estimated not to exceed $500,000.00.

### E.    Proposed Notice Program

The Parties' proposed Notice Program is designed to reach as many Settlement Class members as possible and is the best notice practicable under the circumstances. Joint Decl. ¶ 34;

Declaration of Cameron R. Azari, Esq. Regarding Notice Program ("Notice Decl."), attached as *Exhibit C*, at ¶ 18. Navy Federal has previously provided Settlement Class member data to Plaintiffs' expert, Mr. Olsen, necessary to create the Settlement Class List.[3] Joint Decl. ¶ 19. Thus, within 45 days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall commence the Notice Program. Agreement ¶ 99. Notice will be provided by: (1) Email Notice to Accountholders for whom Navy Federal maintains email addresses; (2) Postcard Notice to Accountholders for whom Navy Federal does not have a valid email address; and (3) Long Form Notice, which will be available on the Settlement Website and by mail from the Settlement Administrator on request. *Id.* ¶¶ 49, 55, 61, 68. The Long Form Notice will be converted to Spanish, and a Spanish language notation will be made on the Postcard Notice and Email Notice regarding the available translated Long Form Notice. *Id.* ¶ 105.

With the Court's approval, the Email Notice, Postcard Notice and Long Form Notice will be substantially in the forms attached to the Agreement. *Id.*, Exs. 1-3. The Settlement Administrator will perform reasonable address traces for the initial Postcard Notices. *Id.* ¶ 108. The Settlement Administrator will re-mail Postcard Notices to Settlement Class members whose new addresses were identified by no later than 60 days before the Final Approval Hearing, and will also send the Postcard Notice to all Settlement Class members whose Email Notices were returned as undeliverable. *Id.*

All of the Notices will include, among other information, a description of the Settlement's material terms; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the Final Approval Hearing

---

[3] The Settlement Class List includes the list of Accountholders Plaintiffs identified using the methodology #1 described in the Expert Report of Arthur Olsen (ECF 178-1) who are to be sent Notice of the Settlement. *Id.* ¶ 80.

date; and the Settlement Website address at which Settlement Class members may access the Settlement Agreement and other related documents and information. *Id.* ¶¶ 61-62; Exs. 1-3.

In addition, the Settlement Administrator will create and maintain a Settlement Website containing important information about the Settlement and case-related documents. *Id.* ¶ 85. It will also establish a toll-free telephone line for Settlement Class members to call with Settlement-related inquiries and to answer frequently asked questions. *Id.* ¶ 97(d).

### F.      Releases

The Releases are the releases and waivers set forth in Section XIII of the Agreement and are narrowly tailored to the Released Claims.  *Id.* ¶ 71, 131-136. Accountholders in the Settlement Class who opt-out of the Settlement prior to the Opt-Out Period do not release their claims and will not obtain any Settlement benefits. *Id.* ¶ 133. All Settlement Class Members will release their claims, including those who do not submit Valid Claims and are therefore not entitled to a Settlement Class Member Payment. *Id.*

### G.      Opt-Outs and Objections

The Notices will all inform Settlement Class members of their right to opt-out and deadline to do so. Agreement, Exs. 1-3. The Opt-Out Period begins the day after the Notice is first distributed and ends 30 days before the original date set for the Final Approval Hearing. *Id.* ¶ 64.

The Notices will also inform Settlement Class members of their right to object to the Settlement and/or to the Application for Approval of Attorneys' Fees, Costs, and Service Awards. *Id.* ¶ 99. Objections must be filed with or mailed to the Clerk of the Court and mailed to the Settlement Administrator. *Id.* ¶ 103. Objections must be submitted no later than the last day of the Objection Period. *Id.* Objections must include: (a) the name of the Action; (b) the objector's full name, address, email address (if any), and telephone number; (c) all grounds for the objection, accompanied by legal support for the objection known to the objector or the objector's counsel;

(d) the number of times the objector has objected to a class action settlement within the five years preceding the date that objector files the objection, the caption of each case in which the objection has made such objection, and a copy of any orders related to or ruling upon those prior objections that were issued by the trial and appellate courts in each case listed; (e) the identity of all counsel representing the objector, including current or former counsel who may be entitled to compensation for any reason related to the objection to the Settlement or Application for Approval of Attorneys' Fees, Costs and Service Awards; (f) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling on counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (g) any and all agreements relating to the objection or the process of objecting (whether written or oral) between the objector and the objector's counsel; (h) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing in support of the objection; (i) a list of all persons who will be called to testify at the Final Approval Hearing; (j) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (k) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 104. Class Counsel and/or Navy Federal may conduct limited discovery on any objector consistent with the Federal Rules of Civil Procedure including taking a deposition. *Id.*

### H.    Service Awards and Attorneys' Fees and Costs

In recognition of the Class Representatives' time and effort expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the

relief conferred on all Settlement Class Members by the Settlement, Class Counsel will ask the Court to approve a Service Award of up to $5,000.00 for each Plaintiff, payable from the Settlement Fund. *Id.* ¶ 128.

Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs incurred. Joint Decl. ¶ 26. To compensate them for the time, risk, and expense they incurred, Class Counsel will apply for a $2,000,000.00 attorneys' fees and costs award. Agreement ¶ 129.

This Settlement is not contingent on approval of the Application for Approval of Attorneys' Fees, Costs, and Service Awards. *Id*. ¶ 130. If the Court denies the requests or grants amounts other than as requested, the remaining provisions of the Agreement shall remain in force. *Id.*

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL

Fed. R. Civ. P. 23(e) requires court approval of class action settlements. "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 839 (E.D. Va. 2016).[4]

---

[4] The 2018 amendments to Rule 23(e) give specific guidance to federal courts for class settlement approval. *See* Fed. R. Civ. P. 23(e), Committee Notes. The Rule 23(e)(2) factors are whether:
    (A) the class representative and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.
The *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering

The Rule 23 factors must be satisfied for a settlement-only class. *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004). The Rule 23(a) factors are numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 (4th Cir. 2003). And where, as here, the plaintiff seeks preliminary Rule 23(b)(3) settlement class certification, the plaintiff must also demonstrate the predominance and superiority requirements are met. *See* Fed. R. Civ. P. 23(b)(3); *In re Neustar*, 2015 WL 567498, at *3. The preponderance of the evidence standard applies. *In re Neustar*, 2015 WL 567498, at *3.

## V.   ARGUMENT

### A.   The Court Should Preliminarily Approve the Settlement.

A preliminary review of the fairness, reasonableness, and adequacy factors demonstrate the Settlement warrants Preliminary Approval. Therefore, consistent with Fed. R. Civ. P. 23(e)(1), the Court should find it is likely to approve the Settlement under Rule 23(e)(2) and certify the Settlement Class. The Settlement was negotiated in the absence of collusion and is the result of good-faith, informed, arm's-length negotiation between experienced and sophisticated counsel, with the assistance of Magistrate Judge Vaala. Joint Decl. ¶¶ 16, 20.

Any settlement requires the parties to balance the merits of the claims and defenses asserted and the attendant risks of continued litigation and delay. Navy Federal, which has vigorously litigated this case in this Court and the Fourth Circuit, argues the claims are unfounded, denying liability and opposing class certification. Plaintiffs believe their claims are meritorious and they will prevail on the pending motions to decertify the class and to exclude Plaintiffs' expert's

---

the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 Fed. App'x 165, 176 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

opinions, Navy Federal's planned summary judgment motion, and eventually at trial. *Id.* ¶ 21. Any potential recovery could be significantly delayed by appeals. *Id.* ¶ 23. All that is certain is that if litigation continues, the Settlement Class will need to wait much longer before receiving any recovery, if at all. *Id.* Thus, in Class Counsel's experience and informed judgment, the Settlement represents an excellent recovery for the Settlement Class, and the benefits of settling under the proposed terms outweigh the risks and uncertainties of continued litigation. *Id.* ¶ 28.

### 1.      The Settlement Is Fair.

"The fairness analysis is intended primarily to ensure that a settlement is reached as a result of good-faith bargaining at arm's length, without collusion." *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 525 (4th Cir. 2022) (quotations omitted). The relevant "fairness" factors are "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Jiffy Lube*, 927 F.2d at 159; *see also Solomon v. Am. Web Loan, Inc.*, No. 4:17cv145, 2020 WL 3490606, at *4 (E.D. Va. June 26, 2020).

***Posture of the case.*** The Settlement was reached only after extensive work, including a motion to dismiss, completion of discovery, class certification, *Daubert* challenges, two interlocutory appeals (one reversing the dismissal of the Virginia Action and the other denying Navy Federal's Fed. R. Civ. P. 23(f) petition), pending motions to decertify and to exclude experts, and the Parties submitting the statement of undisputed facts and witness lists and exhibit lists for trial. *See Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(C)(i). Before filing suit, Class Counsel performed significant research on Navy Federal's ISA Fee assessment practices, consumer complaints, interviewing Accountholders, including Plaintiffs, and gathering documents to thoroughly investigate Plaintiffs' claims. Joint Decl. ¶ 8. During discovery, Class Counsel

reviewed thousands of Navy Federal's documents, deposed Navy Federal and Visa DPS witnesses, and presented Plaintiffs for deposition. *Id.* ¶ 9 Class Counsel worked closely with a well-qualified data expert who extensively analyzed the account-level ISA Fee data Navy Federal produced. *Id.*

In sum, Class Counsel expended significant resources researching, developing, and litigating the legal claims at issue. *Id.* at ¶ 13. Claims involving foreign transaction fees (here ISA Fees) are novel. *Id.* Class Counsel used their extensive experience litigating contract claims challenging account fees against financial institutions, including against Navy Federal. *Id.* That experience allowed them to know the damages remedies to pursue, as well as the information critical to determine class membership. *Id.* Class Counsel spent extensive time analyzing information regarding the ISA Fee assessment practice via discovery and working with their expert to understand Navy Federal's data and quantify damages suffered by the Settlement Class. *Id.*

The Parties also engaged in extensive, good-faith, arm's-length negotiations via two settlement conferences, the latter one eventually leading to the Settlement. *Id.* Magistrate Judge Vaala oversaw the negotiations. These "adversarial encounters dispel any apprehension of collusion between the parties." *In re Neustar, Inc.*, 2015 WL 5674798, at *10 (where plaintiff "filed an amended complaint, argued at the motion to dismiss stage, noticed an appeal, and engaged Defendants in settlement mediation," the posture of the case supported preliminary approval); *1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 525 (extensive litigation history supported approving settlement). This Action has been adequately litigated, and the Parties have obtained sufficient information to assess the relative strength of their respective claims and defenses.

***Extent of discovery.*** Second, and relatedly, the Parties participated in substantial amounts of discovery, including fact and expert depositions and the exchange of over 53,000 documents and extensive ISA Fee data. Joint Decl. ¶¶ 9-12. Class Counsel also subpoenaed VISA DPS to

understand that data. *Id*. ¶ 9. Working with Class Counsel, Class Counsel's expert analyzed this data to approximate classwide damages. *Id*. Courts in this Circuit have recognized that even informal damages discovery satisfies the fairness factor, particularly where experts are involved. *In re Jiffy Lube*, 927 F.2d at 159; *In re Neustar, Inc.*, 2015 WL 5674798, at *10; *Temporary Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 1300138, at *10 (D.S.C. July 31, 2012). Thus, extensive, formal discovery completed easily satisfies the second factor.

*Circumstances surrounding negotiations.* The circumstances surrounding the Parties' arm's-length negotiations show the Settlement was fairly reached after a full-day in-person conference before Judge Vaala, followed by continued negotiations with Judge Vaala as facilitator. *See Herrera*, 818 F. App'x at 177; *Jiffy Lube*, 927 F.2d at 159; *accord* Fed. R. Civ. P. 23(e)(2)(B). *See also Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011 WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair when reached "under the supervision and direction" of a Magistrate Judge).

The terms of the Attorneys' Fees and Costs Payment and Service Award are also fair and also the result of arm's-length negotiations. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).[5] The Parties did not discuss attorneys' fees or Service Awards until after agreeing upon the Settlement's material terms. Joint Decl. ¶ 25. Though to be formally judged at the Final Approval stage, given the $5,5000,000.00 common Settlement Fund, the $2,000,000.00 for attorneys' fees and costs and $5,000.00 for a Service Award to each Class Representative is reasonable and fair. These amounts

---

[5] Whether the attorneys' fees are reasonable on their own terms is a Fed. R. Civ. P. 23(h) analysis. By contrast, under Rule 23(e), the analysis is not of the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. *See Pinon v. Daimler AG*, No. 1:18-CV-3984, 2021 WL 6285941, at *7 (N.D. Ga. Nov. 30, 2021) (finding class relief adequate where the parties negotiated attorneys' fees for class counsel only after reaching agreement on the terms of the class relief, and the payment of fees did not impact the amount of relief available to the class members, among other things).

are well within the range of approval for class action settlements.[6]

 ***Experience of counsel.*** Class Counsel are highly experienced in consumer class action litigation, and have brought that significant experience to bear in litigating and settling this Action. *See* Joint Decl. ¶¶ 2-7, 27, Exs. 1-4; *See also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving various account fees. Joint Decl. ¶ 27. Counsel "may be evaluated by their affiliation with well-regarded law firms with strong experience in the relative field," and by any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc.*, 2015 WL 5674798, at *11 (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013)). *See also Herrera*, 818 F. App'x at 177; *In re Lumber Liquidators*, 952 F.3d at 485. Based on their experience, Class Counsel endorse the Settlement as fair and adequate. Joint Decl. ¶ 28. Courts afford substantial consideration to the view of Class Counsel in considering whether a class settlement is fair. *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) (it is "entirely warranted" for the court to "pay heed to" the judgment of experienced class counsel). Additionally, Navy Federal's Counsel are also from a well-regarded law firm, and brought their experience litigating class actions to vigorously defend Navy Federal through the time that the Parties negotiated the Settlement.

---

[6] *See, e.g.*, *Bicking*, 2011 WL 5325674, at *2, *5 & n.6 (preliminarily approving class settlement providing for service award of $5,000); *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013) (recognizing the "presumptive reasonableness" of a fee award of one-third of the common fund); *In re Titanium Dioxide Antitrust Litig.*, No. RDB-10-0318, 2013 WL 5182093, at *5 n.9 (D. Md. Sept. 12, 2013) ("[A] one-third contingent fee arrangement is a standard practice in this country, and Class Counsel's intention to request that portion of the settlement fund as attorneys' fees does not shock the Court.").

### 2.      The Settlement Is Adequate.

Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159. Each relevant factor is satisfied.[7]

***Relative strength of the claims / Difficulties of proof.*** The first and second factors are generally considered together to evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills*, 265 F.R.D. at 256. *See also 1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 526 (affirming settlement and noting existence of defenses which raised obstacles to recovery). Plaintiffs are confident in their claims, but Navy Federal has vigorously raised numerous defenses, and motions to decertify the class and exclude Plaintiffs' damages expert are currently pending. *See* Joint Decl. ¶ 21; Section II.B., *supra.* Navy Federal will continue to argue the contract permitted the challenged ISA Fees at the summary judgment stage, where the legal standard is less favorable to Plaintiffs, even though the Fourth Circuit reversed the dismissal of the Virginia Action. Joint Decl. ¶ 22. Accordingly, there is a distinct possibility Plaintiffs and the Settlement Class are "not likely to recover if this case does not settle." *In re Neustar, Inc.*, 2015 WL 5674798, at *11 (preliminarily approving settlement where court dismissed the case, "indicating the weakness of Lead Plaintiff's claims and the obstacles of proof it faces moving forward"). Absent

---

[7] The fifth factor cannot be evaluated until after the Court authorizes Notice to be disseminated to the Settlement Class.

settlement, Plaintiffs' success on the pending and imminent motions would not deter Navy Federal to continue to dispute the factual and legal bases for the claims in this Court and later the Fourth Circuit on appeal. The existence of these numerous disputed factual and legal issues creates uncertainty and risk for all Parties, supporting Preliminary Approval. *Solomon*, 2020 WL 3490606, at *5 (finding first and second factors were satisfied where "it is possible that the Fourth Circuit could render a decision adverse to the Plaintiffs").

**Duration and expense of continued litigation.** The likely duration and expense of continued litigation absent the Settlement are substantial. Joint Decl. ¶ 23. While Navy Federal's decertification and most recent *Daubert* motion have been fully briefed and argued, the Court has not yet ruled. *Id*. ¶ 22. If the Court decertified the class, Plaintiffs would challenge that ruling. *Id*. If class certification remained, the litigation class of approximately 4,000,000 members would be sent an opt-out class notice at the immediate, substantial cost of approximately $400,000.00. *Id*. The Parties would then brief competing motions for summary judgment to be decided after the opt-out period ends. *Id*. And of course, the expense and burden of trial and subsequent appeals will be substantial. *Id*. This Action will potentially continue for several more years (including appeals) should it not settle now without any guarantee of additional benefits for the Settlement Class and risk that they will receive nothing if Navy Federal prevails. *Id*. *See 1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 526 (potential costs of litigating the case, even if successful, supported approving settlement); *In re Neustar, Inc.*, 2015 WL 5674798, at *12 (granting preliminary approval where "if plaintiffs succeed on appeal, the case must proceed to the costly procedures of class certification, discovery, summary judgment, and trial before any putative class members may recover"). *Accord* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor, thus, favors Preliminary Approval.

**Solvency of the Defendant.** There is no indication Navy Federal, the largest U.S. credit

union, could not satisfy a class judgment, but the fourth factor is "largely considered beside the point given the other factors weighing in favor of preliminary approval." *Solomon*, 2020 WL 3490606, at *5 (quoting *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D.W.Va. 2002)). Continued litigation would be expensive and greatly consume the Parties' and the Court. Thus, on balance, the risks, delays, and costs associated with further litigation favor Preliminary Approval.

### 3.  The Settlement is Reasonable.

The Settlement is reasonable because it provides an excellent result for the Settlement Class, and also treats the Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)-(D). The Fourth Circuit has "not enumerated factors for assessing a settlement's reasonableness," but has "suggested" that:

> [A]ssessing whether a class settlement is "reasonable" involves examining the amount of the settlement. To the extent that reasonableness does any work not already performed by one of the other Rule 23(e)(2) requirements, we think it at least ensures that the amount on offer is commensurate with the scale of the litigation and the plaintiffs' chances of success at trial.

*1988 Tr. for Allen Child. Dated 8/8/88*, 28 F.4th at 527 (citations omitted).

Here, despite the class certification and merits risks, Class Counsel successfully negotiated a $5,500,000.00 non-reversionary Settlement Fund after years of contentious litigation. The Settlement Fund represents a range of approximately 19% of the maximum likely damages (using methodology #1 of the Expert Report of Arthur Olsen (ECF No. 178-1)) and approximately 80% of the minimum likely damages (using table 17 of the Expert Report of David Alfaro (ECF No. 178-4)). Joint Decl. ¶ 24. Indeed, courts in this Circuit routinely grant final approval to settlements providing between 5-15% of maximum potential damages.[8] The Settlement will provide

---

[8] *See In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654, 660 (E.D. Va. 2001) (order approving settlement amounting to approximately 13.9% of the maximum recovery at the time of judicial approval in securities fraud class action); *In re Genworth Fin. Sec. Litig.,* 210 F.

meaningful, tangible benefits to Settlement Class Members without further delay.

Additionally, Fed. R. Civ. P. 23(e)(2)(C) requires the Court to consider the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; the terms of any proposed award of attorneys' fees, including the timing of payment; any agreement required to be identified under Rule 23(e)(3),[9] and whether the proposal treats class members equitably relative to each other under Fed. R. Civ. P. 23(e)(2)(D). Here, these considerations are easily satisfied.

This factor is intended to ensure the settlement "facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Committee Notes on Rule 23 (2018 Am.), Here, the Claims Process is simple. Joint Decl. ¶ 30. Further, subject to Court approval, the Parties have agreed to retain Epiq as Settlement Administrator, an experienced and competent claims administrator to ensure the Claims Process is efficiently managed. *Id*. The Settlement Class members and their Actual ISA Fees have already been identified from Plaintiffs' expert's analysis of Navy Federal's Settlement Class Transactional Data for the Settlement Class List, consistent with a methodology the Court found sufficient to certify a class in this Action, and using the same

---

Supp. 3d at 842 n.3 (order approving settlement amounting to approximately 15% of the possible recovery in securities fraud class action); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 833 (E.D.N.C. 1994) (order approving settlement amounting to 5% of plaintiffs' estimated loss in securities class action); *see also Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ("And because the cash settlement 'may only amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair." (citing *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")).

[9] "The parties seeking approval must file a statement identifying any agreement made in connection with the proposal." *See* Fed. R. Civ. P. 23(3). Here, there is no agreement other than the Agreement itself.

methodology the Court previously approved for disseminating notice to the certified class. Joint Decl. ¶ 33; ECF Nos. 59-60, 127-128, 144, 166-167. The Notice Program will efficiently and directly notify the Settlement Class of the Claims Process and how to access and submit the Claim Form. Joint Decl. ¶ 32. The Claims Process will have Settlement Class Members validate they initiated the debit card transaction while in the United States. *Id*. ¶ 31.

Finally, the proposal treats all class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members may claim the $4.00 Base Class Settlement Class Member Payment, adjusted downward *pro rata* if the number of Valid Claims requires that. Agreement ¶ 116. If the Net Settlement Fund exceeds the total Base Class Settlement Class Member Payments for Valid Claims, then Settlement Class Members who also qualify for Additional Settlement Class Member Payments will receive payments adjusted to reflect the amount of Actual ISA Fees paid. *Id*. ¶ 117. Each Settlement Class Member Payment is based on objective criteria. Joint Decl. ¶ 29. No Settlement Class Member will be treated more favorably than any other. *Id*.

***

In sum, the Settlement benefits are fair, reasonable, and adequate, especially considering the procedural posture of this case and the hurdles the class faced.

### B.     The Court Should Grant Conditional Certification of the Settlement Class.

Certification for settlement purposes "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re The Mills*, 265 F.R.D. at 266. Here, the proposed Settlement Class satisfies all Rule 23(a) and Rule 23(b)(3) requirements and should be granted conditional certification. Plaintiffs note that the Settlement Class includes the same members as those included in the

certified litigation class, with the Class Period matching Navy Federal's available ISA Fee data.[10]
ECF Nos. 128, 144, 164, 165.

### 1.    The Settlement Class Satisfies the Rule 23 Requirements.

*Numerosity.* Fed. R. Civ. P. 23(a)(1) requires the class to be so numerous that joinder of
all parties is impracticable. Here, Plaintiffs' expert analyzed the Settlement Class Transactional
Data, applying a damages methodology, resulting in a Settlement Class List of approximately
4,000,000 Settlement Class members. *See* Joint Decl. ¶ 36. While "no specified number is needed
to maintain a class action," the size of the Settlement Class here unquestionably satisfies
numerosity. *See, e.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984).

*Commonality.* Fed. R. Civ. P. 23(a)(2) commonality requires there be "questions of law or
fact common to the class." Only one common issue is needed. *See McGlothlin v. Connors*, 142
F.R.D. 626 (W.D. Va. 1992). Here, Plaintiffs allege Navy Federal's uniform ISA Fee policy
applied to all Settlement Class members. Joint Decl. ¶ 37. Common issues of fact and law include
the existence of that policy and whether it breaches Navy Federal's uniform contract. *Id.*
Resolution of those issues for Plaintiffs would also resolve the Settlement Class members' claims,
using common evidence. *Id. See Solomon*, 2020 WL 3490606 (finding commonality satisfied
based on "a uniform scheme . . . which would rely on broadly applicable evidence").

*Typicality.* To satisfy Fed. R. Civ. P. 23(a)(3) typicality, the class representative must be
"part of the class and possess the same interest and suffer the same injury as the class members."
*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). The class representative's claims
must "fairly encompass those of the entire class, even if not identical." *Fisher v. Va. Elec. & Power*

---

[10] Plaintiffs refer the Court to their unopposed motion to modify the certified class definition to
shorten the class period, ECF Nos. 164-165, on which the Court had not entered an order when the
Parties notified the Court of this Settlement.

*Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003). Here, Plaintiffs' claims, just like all Settlement Class members' claims, arise from Navy Federal's uniform ISA Fee assessment practice. Joint Decl. ¶ 38. Their interests and the Settlement Class' interests are aligned. *Id.* The Settlement will benefit them in the same way. *Id.*

*Adequacy of Representation.* Fed. R. Civ. P. 23(a)(4) requires a finding that the class representative and Class Counsel will "fairly and adequately protect the interests of the class." Here, Plaintiffs do not have any known conflicts with the Settlement Class, or any "interests antagonistic to the class." *Solomon*, 2020 WL 3490606, at *2; Joint Decl. ¶ 39. They understand and have undertaken their class representative duties, and have adequately represented the Settlement Class, including by communicating with Class Counsel when necessary before and during this litigation, reviewing the Complaints, appealing the order dismissing the Virginia Action, participating in written and deposition discovery, submitting declarations to support the motion for class certification, and approving the Settlement terms. *Id.*

Class Counsel also satisfy the adequacy requirement. Class Counsel has effectively handled numerous consumer protection and complex class actions, including cases against credit unions and banks challenging account fees. *See* Joint Decl. ¶¶ 2-7, 40, Exs. 1-4. The Court has seen Class Counsel apply their experience to this Action, with the Court already determining they will fairly and adequately represent the class in granting the motion for class certification. ECF No. 144 at 9. Moreover, Class Counsel's efforts have resulted in an excellent recovery for the Settlement Class in a novel case, a testament to both their skill and reputation.

## 2.   The Settlement Class Also Satisfies the Rule 23(b)(3) Requirements.

*Predominance.* The first Fed. R. Civ. P. 23(b)(3) requirement is that the common questions of law or fact predominate over questions affecting only individual members. *Id.* This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Gunnells*, 348 F.3d at 428.

Here, Plaintiffs and the Settlement Class seek to remedy common legal grievances based on Navy Federal's assessment of ISA Fees on debit card transactions initiated while the Accountholder was in the United States. Joint Decl. ¶ 41. Whether Navy Federal had a common ISA Fee policy and breached the uniform contract when assessing the challenged ISA Fees are the predominate questions of law and fact over questions, if any, affecting only individual Settlement Class members. *Id. See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (predominance satisfied where the question in each individual controversy would be resolved according to the same legal inquiry); *Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) (predominance satisfied based on defendant's standard conduct). That damages will differ in amount from class member to class member does not defeat predominance where there is common class liability. *Jeffreys*, 212 F.R.D. at 323.

***Superiority.*** Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. The Fed. R. Civ. P. 23(b)(3) superiority factors are (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015).

First, individual suits are unlikely here, because the probable recovery (even for full damages) is relatively small per Settlement Class Member, particularly compared to the expense of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8. Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem*, 521 U.S.

at 617, a class action for a suit like this Action is superior. Second, Class Counsel is not aware of other pending individual litigation against Navy Federal involving ISA Fees. Joint Decl. ¶ 42. And third, resolving this case for a class promotes judicial economy instead of millions of individual actions. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.[11]

### C.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel

Fed. R. Civ. P. 23(g)(1)(A) requires the Court to appoint Class Counsel, after considering (i) Class Counsel's work to identify or investigate the potential claims in the action; (ii) their experience in handling class actions, other complex litigation, and the types of claims asserted in this Action; and (iii) their knowledge of the applicable law; and (iv) their resources to commit to representing the Settlement Class. The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). This analysis overlaps with Class Counsel's Rule 23(a)(4) adequacy.

The Court is well aware from the extensive litigation of this Action, including already appointing Plaintiffs' counsel when granting the motion for class certification, to which Class Counsel applied their class action experience, with a proven track-record of success in other class action. They committed a great deal of time, effort, and expense investigating Navy Federal's ISA Fee assessment practice and contract documents, the legal claims to be pursued, and ISA Fees to be challenged prior to and after filing this Action. Accordingly, Plaintiffs request the Court appoint as Class Counsel for the Settlement Class: Sophia Gold of KalielGold PLLC, Jeff Ostrow and Daniel Tropin of Kopelowitz Ostrow P.A., (Eddie) Jae K. Kim of Lynch Carpenter LLP, and David

---

[11] With class settlements, courts need not consider, whether the case, if tried, would present intractable management problems, because the proposal is there be no trial. *Amchem Prods.*, 521 U.S. at 593.

M. Wilkerson of The Van Winkle Law Firm.

    **D.    The Court Should Approve the Notice Program.**

The Notice Program is designed to conform with Rule 23's procedural and substantive requirements to generally and sufficiently describe the Settlement to alert those with adverse viewpoints to investigate and come forward to be heard and participate in this Action. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort."). "What amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'" *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted). This robust Notice Program is informative, practical, and will reach the vast majority of Settlement Class members using Accountholders' contact information maintained by Navy Federal. Joint Decl. ¶ 35. *See also, e.g.*, *McAdams v. Robinson*, 26 F.4th 149, 159 (4th Cir. 2022) (affirming approval of similar notice plan).

Here, the Notice Program contemplates Notice via direct email or mail, with a Settlement Website and dedicated toll-free number to provide access to information. *Solomon*, 2020 WL 3490606, at *6 (approving notice plan providing for email notice or, if no available email address, a postcard notice, along with a settlement website). A Long Form Notice is also available on the Settlement Website and by mail via request to the Settlement Administrator. Agreement ¶ 62.

The Notice Program will be implemented and administered by Epiq, a reputable and deeply experienced settlement administrator. To ensure Notice reaches as many Settlement Class members as possible, Email Notice will be the primary form of Notice, and, when required, the Settlement Administrator will perform reasonable address traces for Postcard Notices returned

undeliverable. *Id.* ¶ 108. All Notices will include important information, in plain language, about the Settlement and Settlement Class members' rights and options, with the Long Form Notice detailing the opt-out, objection, and Claim Process, and where to find more information about the Action or to contact Class Counsel. *Id.* Exs. 1-3. Additionally, the Notices are designed to be "noticed," reviewed, and understood by Settlement Class members. Notice Decl. ¶ 29. The Notices' design follows principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. *Id.*

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally certify the Settlement Class; (2) appoint Plaintiffs as Class Representatives; (3) appoint counsel listed in paragraph 40 of the Agreement as Class Counsel; (4) preliminarily approve the Settlement; (5) approve the Notice Program and Notices and direct that Notice be sent to the Settlement Class members; (6) approve the Claim Form and Claims Process; (7) order the Agreement's opt-out and objection procedures; (8) appoint the Settlement Administrator; (9) stay all deadlines in the Action pending Final Approval of the Settlement; and (10) set a date for the Final Approval Hearing.

The Parties propose the Court enter the following schedule:

| Event | Date |
|---|---|
| Notice Program Complete | 60 days before original Final Approval Hearing date |
| Motion for Final Approval and Application for Approval of Attorneys' Fees, Costs, and Service Awards | 45 days before original Final Approval Hearing date |
| Opt-Out Deadline | 30 days before original Final Approval Hearing date |
| Objection Deadline | 30 days before original Final Approval Hearing date |
| Deadline to Respond to Objections, if any | 15 days before original Final Approval Hearing date |

| Final Approval Hearing | **April 25, 2024** (or a date soon thereafter) |
| Claims Deadline | 15 days after original Final Approval Hearing date |

A proposed Preliminary Approval Order is attached as ***Exhibit D***.

Respectfully submitted,

/s/ *Heather Whitaker Goldstein*
Heather Whitaker Goldstein (VSB 41480)
David M. Wilkerson**
THE VAN WINKLE LAW FIRM
11 N. Market Street
Asheville, North Carolina 28801
Telephone: 828-844-7169
hgoldstein@vwlawfirm.com
dwilkerson@vwlawfirm.com

Jeffrey Ostrow**
Jonathan Streisfeld**
Daniel Tropin**
KOPELOWITZ OSTROW
FERGUSON WEISELBERG GILBERT
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com
streisfeld@kolawyers.com
tropin@kolawyers.com

Sophia Goren Gold**
KalielGold PLLC
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: 202-350-4783
sgold@kalielgold.com

Todd Carpenter***
(Eddie) Jae K. Kim**
LYNCH CARPENTER LLP
1350 Columbia Street. Suite 603

San Diego, CA 92101
Telephone: 619-762-1910
tcarpenter@carlsonlynch.com
ekim@lcllp.com
*Counsel for Plaintiffs and the Putative
Classes*

*Admitted *pro hac vice* in No. 21-CV-722.
**Admitted *pro hac vice* in No. 21-CV-722
and No. 22-CV-844.
***Application for admission *pro hac vice*
 forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of November, 2023, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system.


*/s/   Heather Whitaker Goldstein     *