IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SIOBHAN MORROW and TRACEE LE FLORE, individually and on behalf of all others similarly situated, | Case No. 1:21-cv-722-MSN-LRV |
| Plaintiffs, | |
| v. | |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |
| MARIA HART and TRACEE LE FLORE, individually and on behalf of all others similarly situated, | Case No. 1:22-cv-844-MSN- LRV |
| Plaintiffs, | |
| v. | |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

## I.   INTRODUCTION

Plaintiffs[1] respectfully submit this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards. On December 8, 2023, this Court preliminarily approved the Class Action Settlement Agreement executed by Plaintiffs and Defendant, finding the Settlement to be provisionally fair, adequate, and reasonable, and conditionally certified the Settlement Class for settlement purposes only. *See* ECF No. 237. In light of the significant result achieved, Plaintiffs and Class Counsel respectfully request the Court grant Final Approval of the Settlement.

The Settlement satisfies all Fourth Circuit criteria for Final Approval. After nearly four years of contentious, hard-fought litigation, and several rounds of good faith and arm's-length negotiations between counsel experienced in complex class action litigation and facilitated by United States Magistrate Judge Lindsey R. Vaala, Navy Federal agreed to establish a **$5,500,000.00** non-reversionary cash Settlement Fund to be distributed to all Settlement Class Members who submit Valid Claims.

The Settlement has been well received by the Settlement Class. Thus far, the Settlement Administrator has received 38,238 Claim Forms, zero objections to the Settlement, and only nine opt-outs. Declaration of Cameron R. Azari, Esq. Regarding Implementation of Notice Program ("Admin Decl.") ¶¶ 27, 29, attached as ***Exhibit C***. The Settlement Class's positive response to the Settlement and further justifies Final Approval.

Additionally, Class Counsel's request for attorneys' fees, costs and Service Awards also meet the Fourth Circuit's criteria for such awards. The requested $2,000,000 Attorneys' Fees and

---

[1] The capitalized terms used herein are defined and have the same meaning as those used in the Agreement unless otherwise stated. The Agreement is attached hereto as ***Exhibit A.***

Costs Payment includes counsel's actual costs incurred and attorneys' fees of approximately one-third of the Settlement Fund, a percentage reasonably and routinely approved by courts in the Fourth Circuit and across the nation in similar account fee class actions. The attorneys' fee request is eminently justified by Class Counsel's substantial lodestar in this case, which *exceeds* the amount requested, resulting in a negative multiplier. Further, Plaintiffs should be awarded $5,000.00 Service Awards each for serving as Class Representatives.

## II.    BACKGROUND

This Action seeks redress for Navy Federal's alleged improper assessment of foreign transaction fees, also known as ISA Fees, on debit card transactions that Accountholders initiated while in the United States throughout the Class Period. *See generally* Virginia Action, ECF No. 1; South Carolina Action, ECF No. 1, 12; California Action ECF No. 1. Plaintiffs claim Navy Federal breached its uniform agreement and the implied covenant of good faith and fair dealing when charging these challenged ISA Fees, which according to Plaintiffs' interpretation, only permitted ISA Fees on transactions initiated while the Accountholder was physically located abroad. *Id.*

### A.    Litigation History and Settlement Negotiations

Plaintiffs' Motion for Preliminary Approval detailed the Action's history at length. *See* ECF No. 234. Plaintiffs refer the Court to that detailed recounting which described: (1) Plaintiff Morrow's California Action filed on August 21, 2020, and voluntary dismissal on March 12, 2021; (2) Plaintiffs Hart's and Le Flore's South Carolina Action filed on January 7, 2021, and Le Flore's voluntary dismissal on May 26, 2021; (3) Navy Federal's motion to dismiss the South Carolina Action and the Court's denial as to Hart's claims and dismissal of the nationwide class allegations; (4) Morrow and Le Flore's Virginia Action filed on June 15, 2021, Navy Federal's subsequent motion to dismiss, and the Court's dismissal of the Virginia Action with prejudice; (5) Plaintiffs'

appeal to the Fourth Circuit, which including briefing and oral argument before the Fourth Circuit vacated the dismissal on July 7, 2022; (6) the transfer of the South Carolina Action and consolidation with the Virginia Action; (7) the Parties' vigorous discovery efforts, including written discovery, Navy Federal's 53,000-page document production and extensive ISA Fee transaction data, and twelve depositions—three of Navy Federal fact witnesses, three of Navy Federal's expert witnesses, VISA DPS's corporate representative, one of each Plaintiff, and two of Plaintiffs' damages expert witness; (8) an unsuccessful settlement conference before Magistrate Judge Ivan D. Davis; (9) briefing and oral arguments on Plaintiffs' motion for class certification, which the Court granted, and Navy Federal's *Daubert* motion of Plaintiffs' damages expert, Arthur Olsen, which the Court denied, along with its subsequent motion to reconsider the class certification order; (10) the Fourth Circuit's denial of Navy Federal's petition to appeal the class certification order on May 31, 2023; (11) the Parties' exchange of merits expert reports and subsequent depositions; (12) the Parties' pre-trial preparations, which included a Final Pretrial Conference on July 20, 2023, exchange of Rule 26(a)(3) disclosures, Witness Lists, Exhibit Lists, objections thereto, and a Stipulation of Uncontested Facts; (13) briefing and oral argument on Navy Federal's motion to decertify the class and motion to exclude Mr. Olsen's classwide damages calculation; (14) briefing and oral argument on Plaintiffs' motion to exclude Dr. Reardon, Navy Federal's proffered consumer survey expert; (15) a settlement conference before Judge Vaala on September 7, 2023, continued negotiations, and continued conferences on September 11 and 12, 2023 that resulted in the Parties reaching a settlement in principle; and (16) the Parties' agreement that in exchange for a classwide release, Navy Federal shall pay $5,500,000.00 to create a common fund for the benefit of the Settlement Class.

### III.    SUMMARY OF SETTLEMENT TERMS

#### A.  Settlement Class

The Settlement Class is an opt-out class under Federal Rule of Civil Procedure 23(a) and

(b)(3). The Court preliminarily approved the Settlement Class defined as:

> [A]ll current and former Navy Federal Accountholders who were assessed at least one ISA Fee during the Class Period for purchases made while they were physically located in the United States. The Class Period is from August 9, 2016 to March 24, 2023. Excluded from the Settlement Class is Navy Federal, its parents, subsidiaries, affiliates, officers and directors, all Settlement Class Members who make a timely election to be excluded, and all judges assigned to this litigation and their immediate family members.

ECF No. 237 at ¶ 2; Agreement ¶ 79; 41.

#### B.  Settlement Class Benefits and the Claims Process

The Settlement consists of Navy Federal's commitment to establish a non-reversionary

$5,500,000.00 cash Settlement Fund for the benefit of the Settlement Class, that will be used to

pay: (a) Settlement Class Member Payments; (b) Settlement Administration Costs; (c) Court-

approved Attorneys' Fees and Costs Payment to Class Counsel; and (d) Court-approved Service

Awards to the Class Representatives. *Id.* ¶¶ 84, 90.

Settlement Class Members must submit a Valid Claim to receive a Settlement Class

Member Payment by submitting a Claim Form either online through the Settlement Website or in

hard copy by sending it by mail to the Settlement Administrator. *Id.* ¶¶ 38, 112. The Settlement

Administrator will collect, review, de-duplicate, and assess each Claim Form to determine whether

they are Valid Claims. *Id.* ¶ 114.

No later than 30 days after the Effective Date, the Settlement Administrator shall deliver

to the Parties a complete list of all Settlement Class Members who submitted Valid Claims, and

then the Parties will deliver to the Settlement Administrator within 30 days a list that contains the

Actual ISA Fee for each Settlement Class Member with a Valid Claim to allow for the calculation of each Settlement Class Member Payment. *Id.* ¶ 120.

Navy Federal will make Settlement Class Member Payments to those Settlement Class Members who make Valid Claims as follows:

*Base Settlement Class Member Payment Calculation.* All Settlement Class Members with Valid Claims are eligible to receive a $4.00 Base Settlement Class Member Payment. *Id.* ¶116. If there are not enough funds in the Net Settlement Fund to pay $4.00 to each of them, each Base Settlement Class Member Payment will be reduced *pro rata*. *Id.*

*Additional Settlement Class Member Payment Calculation.* If funds remain, the remainder of the Net Settlement Fund will be payable to Settlement Class Members who submitted Valid Claims and had more than $4.00 in Actual ISA Fee(s) during the Class Period as an Additional Settlement Class Member Payment. *Id.* ¶ 117. The Additional Settlement Class Member Payment will be the amount equal to (and no more than) each of their respective Actual ISA Fee(s) (as determined by the Settlement Class Transactional Data) subtracted by $4.00. *Id.*

Electronic payments will be initiated by the Settlement Administrator. *Id.* ¶ 122.

**C. Disposition of Residual Funds**

Within one year after the Settlement Administrator mails the first Settlement Class Member Payment, any Residual Funds will be distributed to *cy pres* recipient, No Plate Left Behind, a partnership between Navy Federal and Feeding America to reduce hunger for servicemembers, veterans, and their families. *Id.* ¶ 124.

**D. The Notice Program**

The Notice Program was completed pursuant to the Court's Preliminary Approval Order. Joint Declaration of Class Counsel ("Joint Decl.") ¶ 22, attached as ***Exhibit B***. It was comprised

of three components: (1) Email Notice to Accountholders for whom Navy Federal maintains email addresses; (2) Postcard Notice to Accountholders for whom Navy Federal does not have a valid email address; and (3) Long Form Notice, available on the Settlement Website and by mail from the Settlement Administrator. Agreement ¶¶ 49, 55, 61, 68.

The Settlement Administrator received the Settlement Class List from Navy Federal, which contained Settlement Class Members' names, last known addresses and/or email addresses, and ran the mailing addresses through the National Change of Address Database. Admin Decl. ¶¶ 11, 15; Agreement ¶ 107. From January 10, 2024, through January 21, 2024, 3,961,608 Email Notices were sent to Settlement Class members for whom Navy Federal maintained email addresses. Admin Decl. ¶ 12. After completion of the Email Notice efforts, 245,239 Emails were not deliverable. *Id.* ¶ 13. On January 12, 2024, 90,190 Postcard Notices were set to Settlement Class Members mailing addresses. *Id.* ¶ 14. An additional 233,328 Postcard Notices were sent to those Settlement Class Members for whom an Email Notice was undeliverable after multiple attempts. *Id.* In summation, as of May 21, 2024, an Email Notice and/or Postcard Notice was delivered to 4,026,229 of the 4,057,762 unique, identified Settlement Class Members. *Id.* ¶ 18. The Notice Program was effective, as 99% of Settlement Class Members received individual notice. *Id.* As approved by the Court, 3,707,902 Reminder Email Notices were sent to Settlement Class members who had not yet submitted a Claim Form. *Id.* ¶ 22.

Additionally, Class Notice has also been effectuated via the Settlement Website as established by the Settlement Administrator. *Id.* ¶ 19. The Settlement Website included pertinent Settlement information, including the Long Form Notice, hyperlinks to the Agreement, the Preliminary Approval Order, the Final Approval Hearing date and time, and instructions on how to submit a Claim Form and how to opt-out or object to the Settlement. *Id.* As of June 5, 2024, the

Settlement Website had 73,145 unique visitor sessions. *Id.*

On January 3, 2024, the Settlement Administrator also established an automated toll-free telephone line, available 24 hours a day, 7 days a week, for Settlement Class members to call to listen to frequently asked questions and to request Long Form Notices or Claim Forms to be mailed. *Id.* ¶ 20. As of June 5, 2024, the toll-free number has handled 3,154 calls and 864 Claim Packages have been mailed. *Id.* ¶ 20, 17.

### E.  Releases

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Parties from the Released Claims. The Releases are set forth in Section XIII of the Agreement.

### F.  Class Representative Services Awards

Class Counsel seeks Service Awards of $5,000.00 for each Class Representative, which subject to Court approval will be paid from the Settlement Fund in addition to Plaintiffs' individual Settlement Class Member Payments, and will serve to compensate Plaintiffs for their time, effort, and risks they assumed in prosecuting the Action. Agreement ¶ 128; Joint Decl. ¶ 23. Specifically, Plaintiffs provided assisted Class Counsel so that they could successfully prosecute and settle the Action, including sitting for lengthy depositions, providing key documents to Class Counsel, and helping respond to written discovery requests. Joint Decl. ¶ 24; *see infra.* In doing so, Plaintiffs were integral to the Action and the catalyst for suing on behalf of the Settlement Class. *Id.* Navy Federal does not object to Class Counsel's request for these Service Awards.

### G.  Attorneys' Fees and Costs, and Settlement Administration Costs

Class Counsel has not yet been paid for their extensive efforts or reimbursed for litigation costs. Pursuant to the Agreement, Class Counsel are entitled to request, and Navy Federal does not

oppose, an Attorneys' Fees and Costs Payment of $2,000,000. Agreement ¶ 129. Such an award is subject to Court approval and will compensate Class Counsel for their time, risk, and costs incurred in pursuing the class claims. Also, the Settlement Administrator will invoice Class Counsel for all Settlement Administration Costs estimated to be $506,122.66, payable from the Settlement Fund and subject to the Court's approval. Agreement ¶ 98; Joint Decl. ¶ 28; Notice Decl. ¶ 30.

## IV.    LEGAL STANDARD FOR FINAL APPROVAL

"Rule 23(e) of the Federal Rules of Civil Procedure obliges parties to seek approval from the district court before settling a class-action lawsuit." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* 952 F.3d 471, 483 (4th Cir. 2020) (citing Fed. R. Civ. P. 23(e)). After the court preliminarily determines that the proposed settlement is within the range of possible approval, and after notice is sent to the provisionally certified class, the court conducts a fairness hearing to allow class members to voice objections or support the settlement. *See In re Zetia (Ezetimibe) Antitrust Litig.,* No. 2:18-md-2836, 2023 WL 6871635, at *3 (E.D. Va. Oct. 18, 2023). Only then may the court grant final approval upon a finding that the settlement is fair, adequate, and reasonable. *Id.*

As Plaintiffs' Motion for Preliminary Approval addressed, the Fourth Circuit utilizes "multifactor standards for assessing whether a class-action settlement is 'fair, reasonable, and adequate' under Rule 23(e)(2)." *In re Lumber Liquidators,* 952 F.3d at 484 (footnote omitted) (citing *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991)).[2] This Court already

---

[2] The 2018 amendments to Rule 23(e) give specific guidance to federal courts for class settlement approval. *See* Fed. R. Civ. P. 23(e), Committee Notes. The Rule 23(e)(2) factors are whether:

      (A) the class representative and class counsel have adequately represented the class;
      (B) the proposal was negotiated at arm's length;
      (C) the relief provided for the class is adequate, taking into account:

thoroughly examined the Rule 23(e)(2) and *Jiffy Lube* factors in preliminarily approving the Settlement. *See* ECF No. 237 at ¶¶ 10-21. Thus, Plaintiffs respectfully submit a brief recitation of these factors confirms the Settlement remains fair, adequate, and reasonable. And importantly, after Notice was successfully disseminated to the Settlement Class, the overwhelmingly positive response of the Settlement Class further confirms Final Approval is certainly warranted here.

## V.    ARGUMENT

### A.  The Settlement Satisfies the Criteria for Final Approval

A final review of each relevant factor supports granting Final Approval of the Settlement. The Settlement is inherently fair, as it was reached in the absence of fraud or collusion and is the product of several informed arm's-length negotiations made in good faith between competent and experienced counsel. Settlement negotiations were assisted by Magistrate Judge Vaala and conducted only after the Parties had extensively investigated and litigated the claims over the course of nearly four years, including contentious motion practice, extensive written and deposition discovery, and significant expert analysis. Joint Decl. ¶¶ 8-10, 33.

The Settlement is undoubtedly adequate, as it provides Settlement Class Members with substantial, guaranteed, and immediate monetary recovery that would typically take several years of continued litigation and significant costs to achieve. Indeed, Plaintiffs faced significant hurdles

---

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

The *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *Herrera v. Charlotte School of Law, LLC,* 818 Fed. App'x 165, 176 (4th Cir. 2020) (citing *In re Lumber Liquidators,* 952 F.3d at 474 n.8).

in this Action on both the merits and in attaining class action status at several junctures in this Court and the Fourth Circuit, including dismissal of the Virginia Action with prejudice and reversal on appeal, Navy Federal's pending motion to decertify the class and to exclude Plaintiffs' expert's opinions, as well as its imminent summary judgment motion, trial, and possible appeals. *Id.* ¶ 14. Any of these obstacles could have derailed Plaintiffs' case and resulted in no recovery for the Settlement Class. As such, the benefits of settling under the proposed terms outweigh the risks and uncertainties of protracted litigation. *Id.* ¶ 20. The fact that no Settlement Class Member has objected to the Settlement further supports the Settlement's adequacy.

The exceptional benefits bestowed upon the Settlement Class render the Settlement reasonable, as well, as the amount of the Settlement Fund represents a fair percentage of the total likely damages were Plaintiffs to prevail and is well within the range of settlement recoveries approved in this Circuit. *Id.* ¶ 16. The Settlement treats Settlement Class Members equitably relative to each other and the distribution method is effective. ¶ 21.

### 1. The Settlement is Fair

The relevant "fairness" factors examine whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion, on the basis of (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel[.]" *Jiffy Lube*, 927 F.2d at 159; *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 571 (E.D. Va. 2016).

***Posture of the case.*** "The first factor requires the court to evaluate 'how far the case has come from its inception[,]' since a settlement in an immature case might point towards collusion, while a mature case will point in the opposite direction." *In re Zetia,* 2023 WL 6871635, at *3 (citations omitted). Here, the Settlement was reached only after extensive work over the course of

nearly four years, including Class Counsel's extensive pre-suit investigation of Navy Federal's

ISA Fee assessment practices; the completion of discovery which involved reviewing thousands

of Navy Federal's documents with the assistance of an expert who analyzed account-level ISA Fee

data, numerous depositions of Plaintiffs, Navy Federal's witnesses, experts on both sides, and Visa

DPS witnesses; researching, briefing, and litigating a motion to dismiss, class certification,

*Daubert* challenges, two interlocutory appeals (one reversing the dismissal of the Virginia Action

and the other denying Navy Federal's Fed. R. Civ. P. 23(f) petition); pending motions to decertify

and to exclude experts; and the Parties' pre-trial submissions. Joint Decl. ¶¶ 2-7. Thus, the posture

of the case demonstrates the Settlement's fairness. *See e.g., In re Zetia,* 2023 WL 6871635, at *3

(the "parties' extensive litigation over nearly five years prior to trial eliminates concern by the

court that the Settlement was a product of collusion").

     ***Extent of discovery.*** As addressed *supra,* the Parties participated in extensive discovery,

including fact and expert depositions and the exchange of over 53,000 pages and extensive ISA

Fee data. Joint Decl. ¶ 3. Class Counsel also subpoenaed VISA DPS for relevant documents and a

deposition to understand that data. *Id*. Class Counsel's expert analyzed this data to approximate

classwide damages. *Id*. Thus, the amount of information exchanged in formal discovery has been

sufficient to inform the Parties' negotiations and to allow them to evaluate, with confidence, the

strengths and deficiencies of Plaintiffs' claims and to craft a fair settlement structure for the

Settlement Class.

     ***Circumstances surrounding negotiations.*** The circumstances surrounding the Parties'

arm's-length negotiations show the Settlement was fairly reached after a full-day in-person

conference before Judge Vaala, followed by continued negotiations. *See* Fed. R. Civ. P.

23(e)(2)(B); *see also Bicking v. Mitchell Rubenstein & Assocs., P.C.*, No. 3:11CV78-HEH, 2011

WL 5325674, at *5 (E.D. Va. 2011) (finding settlement fair when reached "under the supervision and direction" of a Magistrate Judge); *Galloway v. Williams,* No. 3:19-cv-470, 2020 WL 7482191, at *7 (E.D. Va. Dec. 18, 2020) (holding similarly where "the settlement conference was overseen by" a Magistrate Judge). Relatedly, because the Parties did not discuss attorneys' fees and costs or Service Awards until after agreeing to the material Settlement terms, the terms of the Attorneys' Fees and Costs Payment and Service Award are also the result of good-faith negotiations, as required by Rule 23(e)(2)(C)(iii). *See* Joint Decl. ¶ 17.

*Experience of counsel.* Class Counsel are highly experienced in consumer class actions, as they have extensive backgrounds in litigating and settling complex consumer class actions against financial institutions, including dozens of account fee cases. Joint Decl. ¶ 19; Exs. 1-4. *See also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel's specialized knowledge and experience in this litigation niche places them in a superior position to weigh the Action's strengths and weaknesses and arrive at the most favorable Settlement for the Class. *See Brown,* 318 F.R.D. at 573 (counsel's "wealth of experience and knowledge in consumer-protection actions" supported the settlement's fairness). As such, it is "entirely warranted" for this Court to "pay heed to" experienced Class Counsel's judgment. *The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 255 (E.D. Va. 2009).

### 2. The Settlement is Adequate

A proposed settlement's adequacy is judged by the "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 159.

*Relative strength of the claims / Difficulties of proof.* The first and second factors are

routinely considered in tandem because they ask the Court "to examine 'how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case.'" *Brown,* 318 F.R.D. at 573 (quoting *The Mills Corp.,* 265 F.R.D. at 256). Although the Action's mature posture coupled with the successful class certification suggest Plaintiffs' case is strong, success is far from certain given the numerous remaining disputed factual and legal issues. For instance, Navy Federal's motions to decertify the class and exclude Plaintiffs' damages expert are pending. Joint Decl. ¶ 13. Further, Navy Federal will continue to argue the contract permitted the challenged ISA Fees at the summary judgment stage, where the legal standard is less favorable to Plaintiffs. *Id.* ¶ 14. Thus, the Settlement accounts for the strength of Plaintiffs' case in light of the risks in prevailing at trial on a classwide basis. *See e.g. In re Zetia,* 2023 WL 6871635, at *4 (this factor supported final approval even where settlement was reached during jury selection because "an outstanding motion *in limine* on the admissibility of a piece of Defendants' evidence increased the uncertainty for both sides").

**Duration and expense of continued litigation.** Had no Settlement been reached, additional time and substantial cost of continued litigation is certain. Joint Decl. ¶ 15. Indeed, even after the Court were to rule on Navy Federal's pending decertification motion and most recent *Daubert* motions, the Parties would still need to litigate Navy Federal's forthcoming summary judgment motion, as well as trial and any subsequent appeals on any of these motions. *Id.* ¶ 14. *See The Mills Corp.,* 265 F.R.D. at 256 (final approval supported where "Plaintiffs and Defendants have engaged in vigorous opposition over motions to dismiss, certify, and . . . even proceeded with an appeal before the Fourth Circuit"). Further, the Settlement benefits, providing a certain and immediate recovery for the Settlement Class, far outweigh continued litigation costs—especially where there is no guarantee of *any* recovery for the Settlement Class at the end. Joint Decl. ¶ 15. *See e.g., 1988*

*Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.,* 28 F.4th 513, 526 (4th Cir. 2022) (noting "the potential costs of litigating the case—even if successful—" supported settlement approval because it "avoids protracted litigation costs" and "provides them with immediate recovery").

      **Solvency of Defendant.** There is no indication Navy Federal will be unable to satisfy a judgment. Ultimately, however, as this Court recognized at Preliminary Approval, this factor is "largely considered beside the point given the other factors weighing in favor of" final approval. *See Solomon v. Am. Web Loan, Inc.,* No. 4:17-cv-145, 2020 WL 3490606, at *5 (E.D. Va. June 26, 2020) (citing *Henley v. FMC Corp.,* 207 F. Supp. 2d 489, 494 (S.D. W.Va. 2002)).

      **Degree of Opposition to the Settlement.** The reaction of the Settlement Class has been overwhelmingly positive. Since the Court granted Preliminary Approval, the Settlement Administrator has disseminated notice to 4,026,229 Settlement Class members and thereafter provided a reminder email notice to 3,707,902 Settlement Class members. Admin Decl. ¶¶ 18, 22. The robust Notice Program—including Email Notice, Postcard Notice, and Long Form Notice— provided adequate information regarding the nature of the Action and the claims, the Claims Process, the Settlement structure and Settlement Class benefits, and apprised each Settlement Class member of his or her rights and obligations. Sufficiently informed of their choices, no Settlement Class Member has submitted a valid objection to the Settlement,[3] and only nine have opted-out thus far. *Id.* ¶ 27. As such, this positive reaction to the Settlement strongly favors Final Approval. *See e.g., In re Zetia,* 2023 WL 6871635, at *5 ("The lack of any objection to the Settlement

---

[3] Three documents were filed in response to the Settlement: two by a Carlton X Mathews, *pro se*, who is currently in prison, is not in the Settlement Class, and apparently seeks to join the case, *see* ECF Nos. 239, 245, and one by a Jonathan Palmer, who submitted an indecipherable document entitled "Global-Postal [U]nion Treaty: Voluntary Withdraw," *see* ECF No. 243. There is no reason to interpret any of these communications as valid objections or opt-outs. All should be disregarded by the Court.

Agreement strongly supports a finding that it is adequate"); *see also Haney v. Genworth Life Ins. Co.,* No. 3:22-cv-00055-REP, 2023 WL 2596845, at *3 (E.D. Va. Feb. 15, 2023) (granting final approval despite 19 objections and 190 opt-outs, representing 0.6% of the settlement class).

### 3. The Settlement is Reasonable

Lastly, the Settlement is eminently reasonable because the $5.5 million non-reversionary Settlement Fund is an excellent result for the Settlement Class, as it will confer a meaningful, guaranteed monetary benefit representing approximately 19% of Settlement Class Members' maximum likely damages and approximately 80% of the minimum likely damages. Joint Decl. ¶ 16. Indeed, as this Court held at Preliminary Approval, "[t]he Settlement Fund represents a substantial percentage of the likely damages were Plaintiffs to prevail on their theory of liability for putative class claims." ECF No. 237 at ¶ 19.[4]

The Settlement Fund allocation and method of distributing relief to the Settlement Class is also reasonable. *See* Fed. R. Civ. P. 23(e)(C). The Claims Process has thus far proven to be effective and simple, as 38,238 Claim Forms have been submitted to date, and more Claim Forms are anticipated. Admin Decl. ¶ 29.[5]

Finally, the Settlement reasonably treats Settlement Class Members equitably relative to

---

[4] *See e.g., In re MicroStrategy, Inc. Securities Litigation,* 148 F. Supp. 2d 654, 660 (E.D. Va. 2001) (settlement for approximately 13.9% of the maximum recovery in securities fraud class action); *In re Genworth Fin. Sec. Litig.,* 210 F. Supp. 3d 837, 842 n.3 (E.D. Va. 2016) (settlement for approximately 15% of the possible recovery in securities fraud class action); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F. Supp. 825, 833 (E.D.N.C. 1994) (settlement amounting to 5% of plaintiffs' estimated loss in securities class action); *see also Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir. 1975) ("And because the cash settlement 'may only amount to a fraction of the potential recovery' will not per se render the settlement inadequate or unfair." (citing *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 455 n. 2 (2d Cir. 1974) ("In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.")).

[5] The Settlement Administrator will submit a supplemental declaration describing the likely recoveries per claimant on or before July 9, 2024.

each other. *See* Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members may claim the $4.00 Base Class Settlement Class Member Payment. ¶ 116. If the Net Settlement Fund exceeds the total Base Class Settlement Class Member Payments for Valid Claims, then Settlement Class Members who also qualify for Additional Settlement Class Member Payments will receive payments adjusted to reflect the amount of Actual ISA Fees paid. *Id.* ¶ 117. Each Settlement Class Member Payment is based on objective criteria. Joint Decl. ¶ 21. No Settlement Class Member will be treated more favorably than any other. *Id.* In sum, Final Approval is warranted.

**B. Notice to the Settlement Class Was Adequate and Satisfied Rule 23 and Due Process**

Due Process and Rule 23 require that class notice give class members adequate information about the Settlement to allow them to determine whether to come forward to be heard or participate in the Action. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Manuel v. Wells Fargo Bank, N.A.*, No. 3:14cv238(DJN), 2016 WL 1070819, at *4 (E.D. Va. Mar. 15, 2016) (notice sufficiently protects class members interests where it "convey[s] the nature of the actions and claims, the opportunity and manner of opting out, the binding effect of the judgment, and the opportunity to enter an appearance through an attorney"). As the Court held when granting Preliminary Approval, the Email Notice, Postcard Notice, and Long Form Notice collectively is the best Notice Program practicable under the circumstances and constitutes due and sufficient notice of the Settlement to all Settlement Class members. *See* ECF No. 237 at ¶ 23. Indeed, the Notice Program was designed to provide the best notice practicable and was tailored to take advantage of the information Navy Federal has available about the Settlement Class. *See e.g.*, *McAdams v. Robinson,* 26 F.4th 149, 158-59 (4th Cir. 2022) (affirming similar notice plan providing for email, postcard, and long form notice posted on settlement website or available through telephone).

After Preliminary Approval, the Settlement Administrator provided direct Email Notice and Postcard Notice to all Settlement Class members via the contact information contained in Navy Federal's business records. Admin Decl. ¶ 11. Of the total 4,026,229 Postcard Notices and Email Notices that were sent, only 245,239 Email Notices were returned as undeliverable. *Id.* ¶ 13. This results in a successful deliverable rate of approximately 99%. *Id.* ¶ 18. This reach far exceeds the Federal Judicial Center standard, which states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010); *see also* Admin Decl. ¶ 32.

To date, the Settlement Administrator has received 38,238 Claims Forms, though the deadline to submit Claims has not yet lapsed. *Id.* ¶ 29. The Settlement Administrator sent 3,707,902 Reminder Email Notices to those Settlement Class members who were sent an Email Notice but had not yet submitted a Claim Form. *Id.* ¶ 22. The Claims Deadline will expire on August 8, 2024. Further, no valid objections to the Settlement have been received and only nine opt-outs have been submitted. *Id.* ¶ 27. As mentioned above, neither Mr. Mathews' filings nor Mr. Palmer's filing qualify as objections or opt-out requests, and therefore they should be disregarded. Plaintiffs will further update these figures prior to the Final Approval Hearing following the Objection and Opt-out Deadlines.

### C.  Final Certification of the Settlement Class is Appropriate

The Preliminary Approval Order analyzed the Rule 23(a) and (b)(3) class certification requirements and conditionally certified the Settlement Class for settlement purposes only. *See* ECF No. 237 at ¶¶ 5-7. Nothing has changed since that order was entered that would affect the Court's granting final class certification. As such, for the reasons explained in Plaintiff's Motion

for Preliminary Approval, stated in the Court's Preliminary Approval Order, and reiterated in Class Counsel's Joint Declaration, the Settlement Class should be finally certified for Settlement purposes.

### D.  Notice Pursuant to the Class Action Fairness Act (CAFA) Was Satisfied

CAFA requires a settling defendant to give notice of a proposed class action settlement to appropriate state and federal officials. 28 U.S.C. § 1715(b). The CAFA Notice of Proposed Settlement must supply the information and documents set forth in 28 U.S.C. § 1715(b)(1)-(8). On December 1, 2023, the Settlement Administrator mailed the CAFA Notice, along with a CD containing the documents described in Section 1715(b). *See* Admin Decl.¶ 7. The CAFA Notice protects class members from a settlement that may be deemed unfair or inconsistent with regulatory policies and from class action abuse. No regulatory authorities object.

### E.  Application for Attorneys' Fees, Costs, and Service Awards

In this non-reversionary common fund Settlement, the Notice provides that Class Counsel will request a $2,000,000.00 Attorneys' Fees and Costs Payment. Subtracting the costs incurred by Class Counsel, the total attorneys' fees sought is $1,858,941.91, which represents approximately one-third of the Settlement Fund. Agreement ¶ 129. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material Settlement terms *Id.* ¶ 130; Joint Decl. ¶ 30. Class Counsel should be compensated for their time, risk, efforts, and expenses incurred in pursuing claims for the Settlement Class. If the Court performs a lodestar cross-check, Class Counsel's fee request is more than reasonable under that calculation, as well, as it results in a rare *negative* multiplier. For the reasons stated below, Class Counsel's application should be granted accordingly.

Federal Rule of Civil Procedure 23(h) permits courts to award "reasonable attorneys' fees

and nontaxable costs that are authorized by law or the parties' agreement." Courts in this Circuit recognize "two primary methods" for calculating reasonable attorneys' fees: (1) the "'percentage of the fund' method, which awards fees as a percentage of the benefit secured for the Class; and (2) the 'lodestar' method, which awards fees based on the value of Counsel's time spent litigating the claims." *Brown,* 318 F.R.D. at 575 (citation omitted). Although the Fourth Circuit has not expressly adopted either method, it is well-established district courts routinely calculate class action attorney fee awards under a "percentage of the fund" method. *Galloway,* 2020 WL 7482191, at *5 ("the favored method for calculating attorneys' fees in common fund cases is the percentage of the fund method"); *see also Brown,* 318 F.R.D. at 575 ("current trend among the courts of appeal favors the use of a percentage method…in common fund cases"); *The Mills Corp.,* 265 F.R.D. at 260 (method applies in "the vast majority of courts" across various jurisdictions).

And for good reason, as the percentage-of-the-fund method "better aligns the interests of class counsel and class members because it ties to the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *In re Zetia,* 2023 WL 6871635, at *6 (quoting *Kay Co. v. Equitable Prod. Co.,* 749 F. Supp. 2d 455, 462 (S.D. W. Va. 2010)). Typically, courts will "take advantage of the benefits of both methods" by utilizing a "lodestar cross-check to further evaluate the reasonableness of the proposed award." *Id.* at *7 (quoting *Domonoske v. Bank of Am., N.A.,* 790 F. Supp. 2d 466, 475 (W.D. Va. 2011)). Ultimately, whatever method is used, the ultimate "goal" is to ensure "counsel is fairly compensated." *Brown,* 318 F.R.D. at 575.

Here, the percentage-of-the-fund is the more appropriate method for calculating Class Counsel's attorneys' fees. This method aligns Class Counsel's interest in being paid a fair fee with the interest of the Settlement Class and achieves a maximum recovery in the shortest amount of time required under the circumstances. This method is undoubtedly the favored method in the

Fourth Circuit for cases of this nature and no one objects to this method.

### 1.   The Fee Request is Reasonable Under the Percentage-of-the-Fund Method

It is well-established that Class Counsel may petition the court for compensation relating to any benefits made available to the class that result from the attorneys' efforts. *See e.g., Boeing Co. v. Van Gemert,* 444 U.S. 472, 480 (1980) ("[Settlement class members'] right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."). No doubt, "courts in the Fourth Circuit have frequently found that a percentage award of one-third of the Settlement Fund is within the range of reasonable percentage of recovery[.]" *In re Zetia,* 2023 WL 6871635, at *7.[6] However, in affirming a fee award representing 43% of the common fund in a consumer class action over objection, the Fourth Circuit recently confirmed even a requested "percentage [that] approaches the upper limit of a permissible recovery [ ] isn't unheard of." *McAdams,* 26 F.4th at 162. Indeed, district courts in the Fourth Circuit have acknowledged that "[f]ees awarded under the percentage-of-recovery method in settlements under $100 million have ranged from 15% to 40%." *Boyd v. Coventry Health Care Inc.,* 299 F.R.D. 451, 465 (D. Md. 2014); *see e.g., Jernigan*

---

[6] *See e.g., Boger v. Citrix Sys., Inc.,* No. 19-cv-01234-LKG, 2023 WL 3763974 (D. Md. June 1, 2023) (awarding one-third of $2.75 million non-reversionary settlement fund in a claims-made settlement); *Wallace v. Greystar Real Estate Partners, LLC,* No. 1:18cv501, 2022 WL 3908800 (M.D.N.C. Aug. 30, 2022) (awarding one-third of $4.66 million non-reversionary cash fund in claims-made settlement); *Lamie v. LendingTree LLC,* No. 3:22-cv-307-FDW-DCK, 2024 WL 811519, at *2 (W.D.N.C. Feb. 27, 2024) (awarding one-third of settlement as "reasonable" attorney fee award); *In re Zetia,* 2023 WL 6871635, at *7 (one-third of $23.3 million settlement fund "appropriate" where counsel "litigated the case vigorously for nearly five years, managed the interests of the [ ] Class, and fronted significant costs"); *Six v. LoanCare, LLC,* No. 5:21-cv-00451, 2022 WL 16747291, at *7 (S.D. W.Va. Nov. 7, 2022) (one-third, or $1.5 million, of common fund in consumer class action); *Lambert v. Navy Federal Credit Union,* No. 1:19-cv-00103-LO-MSN (E.D. Va.) (awarding 33.33% of $16 million common fund in overdraft fee class action); *Liggio v. Apple Fed. Credit Union,* No. 1:18-cv-01059-LO-MSN (E.D. Va. Dec. 6, 2019) (awarding one-third of common fund, or $942,799.00 in account fee class action).

*v. Protas, Spivok & Collins, LLC,* No. ELH-16-03058, 2017 WL 4176217, at \*6-8 (D. Md. Sept. 20, 2017) (approving fee award of 40% of common fund as "reasonable" and supported by lodestar cross-check in FDCPA action); *Savani v. URS Professional Solutions LLC,* 121 F. Supp. 3d 564, 572 (D.S.C. 2015) (fee award representing 39.57% of cash fund in ERISA case was "in the range of previous awards in common benefit class actions"). Further, courts have found "a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial." *In re Peanut Farmers Antitrust Litig.,* No. 2:19-cv-00463, 2021 WL 9494033, at \*6 (E.D. Va. Aug. 10, 2021). So too, here, a slight upward adjustment from the usual one-third award is reasonable where the Settlement was reached after a class was certified, discovery was completed, and Class Counsel had already begun preparing for trial. *See* Joint Decl. ¶¶ 3-7.

To assess the reasonableness of a requested percentage, district courts in this Circuit generally weigh the following factors: (1) the results obtained for the Class; (2) objections by Class members to the settlement terms and/or attorneys' fees; (3) the quality, skill, and efficiency of counsel; (4) the complexity and duration of the case; (5) the risk of non-payment; (6) public policy; and (7) awards in similar cases. *See The Mills Corp.,* 265 F.R.D. at 261; *see e.g., In re Zetia,* 2023 WL 6871635, at \*7. Each consideration supports Class Counsel's requested fee.

**Results Obtained for the Settlement Class.** The Fourth Circuit deems "the most critical factor in calculating a reasonable fee award" to be "the degree of success obtained." *McDonnell v. Miller Oil Co.,* 134 F.3d 638, 641 (4th Cir. 1998). Here, the $5,500,000.00 non-reversionary Settlement Fund is a significant achievement and provides Settlement Class Members with Valid Claims a meaningful and immediate benefit representing a range of approximately 19% of the maximum likely damages (using methodology #1 of the Expert Report of Arthur Olsen (ECF No. 178-1)) and approximately 80% of the minimum likely damages (using table 17 of the Expert

Report of David Alfaro (ECF No. 178-4)). Joint Decl. ¶ 16.  Given the obvious litigation risks, the Settlement provides an excellent monetary recovery for the Settlement Class on its face.

**Objections.** No objections have been filed to date, let alone to Class Counsel's request for an Attorneys' Fees and Costs Payment or Plaintiffs' Service Awards. Should any timely objections be received after the filing of this Motion for Final Approval, Class Counsel will file a separate response.

**Quality, Skill, and Efficiency of Counsel.** As the Joint Declaration illustrates, Class Counsel have national reputations for their acquired skill in complex class action litigation, particularly in account fee litigation. Joint Decl. ¶¶ 19, 36; Exs. 1-4 (firm resumes). The Court acknowledged this in its Preliminary Approval Order. See ECF No. 237 at ¶ 6.d. ("Class Counsel appears qualified, competent, and experienced in class action lawsuits."). Indeed, Class Counsel's experience is illustrated by the exceptional recovery obtained for the Settlement Class in this Action. This factor also supports the requested attorneys' fee award.

**Complexity and Duration of the Litigation.** As addressed when analyzing the Settlement's adequacy, see Section V.A.2. *supra*, this case was vigorously litigated for nearly four years and involved numerous complex issues of law and fact. Indeed, claims involving foreign transaction fees assessed by financial institutions like Navy Federal is novel theory of liability, such that there is no model for Plaintiffs' case and therefore, unforeseen pitfalls could easily derail the Settlement Class' claims should they proceed through the rigors of litigation. Joint Decl. ¶ 34. The complexities of the Action were further illustrated by the dismissal of the Virginia Action and the Fourth Circuit's reversal, wherein the disputed issue was whether Navy Federal's contract unambiguously permitted it to charge ISA Fees on transactions with foreign merchants while the cardholder was physically located in the United States. *Id*. ¶ 14. Absent settlement, Plaintiffs will

face more complex issues ripe for resolution, including the final say on whether Navy Federal's contract permitted the challenged ISA Fees at summary judgment and trial, and whether Plaintiffs' expert's damages methodology is viable to assess damages for the Settlement Class. *Id.* ¶¶ 13-14.

*Risk of Nonpayment.* Class Counsel took this complex class action on a contingency fee basis, assuming a significant risk of nonpayment. Joint Decl. ¶¶ 18, 36. Thus, this commitment to prosecute the Action notwithstanding their financial risk supports enhanced compensation. *See e.g., The Mills Corp.*, 265 F.R.D. at 263 ("risk of nonpayment incurred by Lead Counsel is evident in the fact that they undertook this action on entirely contingent fee basis" despite uncertain recovery and "rigorously contested" liability); *Galloway*, 2020 WL 7482191, at *10.

*Public Policy.* Public policy considerations also "favor[] a significant award of attorneys' fees above what Class Counsel would have charged on an hourly fee basis," *In re Capital One Consumer Data Security Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 WL 17176495, at *5 (E.D. Va. Nov. 17, 2022), because attorneys should be incentivized to bring common fund cases like this Action where the alternative—thousands of individual small-dollar claims—would not justify the expense of separate litigation. *See id.* ("The class action device, when not abused, serves an important public interest in securing remedies for consumers who, for economic and practical reasons, would be unable to recover on an individual basis.")

*Awards in Similar Cases.* Claims challenging foreign transaction fees like Navy Federal's ISA Fees are novel. Joint Decl. ¶ 34. Nevertheless, courts approving attorney fee requests in a variety of different types of bank or account fee class action settlements under different theories of liability across the country have approved awards similar to or higher than the award requested here. *See e.g., Lopez v. JPMorgan Chase Bank*, N.A., No. 1:09-MD-02036-JLK (S.D. Fla.) (44% of value of settlement); *Jacobs v. Huntington Bancshares Inc.*, No. 11-cv-000090 (Lake County

Ohio) (40% of value of settlement); *Farrell v. Bank of Am., N.A*., 327 F.R.D. 422 (S.D. Cal. 2018),

*aff'd sub nom. Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020) (40% of $37.5

million common fund); *Wolfgeher v. Commerce Bank, N.A*., No. 1:09-MD-02036-JLK (S.D. Fla.)

(Dkt. 3574) (38% of $18.3 million common fund); *Nelson v. Rabobank*, N.A., No. RIC 1101391

(Cal. Supr.) (35.2% [$750k fee includes % of practice changes]); *In re Checking Account

Overdraft Litig*., No. 1:09-MD-02036-JLK, 2020 WL 4586398 (S.D. Fla. Aug. 10, 2020) (35% of

$7.5 million); *Hawkins et al. v. First Tenn. Bank, N.A*., (Cir. Ct. Tenn.) (35% of $16.75 million);

*Swift v. BancorpSouth*, No. 1:10-cv-00090-GRJ (N.D. Fla.) (35% of $24 million). Thus, the

requested attorneys' fee award is on par with awards approved in similar account fee class actions.

### 2.  The Fee Award is Also Reasonable Based on the Lodestar Method

The use of a lodestar cross-check further confirms Class Counsel's requested attorneys'

fees is reasonable. Where the lodestar method is used as a mere cross-check, "the court need not

exhaustively scrutinize counsels' documented hours as it would if the lodestar method were used

as the primary determiner of reasonableness." *In re Zetia,* 2023 WL 6871635, at *8 (citation

omitted). After examining the time and labor required, the Court may apply a multiplier to the

lodestar. *Berry v. Schulman,* 807 F.3d 600, 617 n.9 (4th Cir. 2015) (noting that using the lodestar

method, "the district court multiplies the number of hours worked by a reasonable hourly rate" and

it can then "adjust the lodestar figure using a multiplier derived from a number of factors, such as

the benefit achieved for the class and the complexity of the case") (citations omitted). Here, there

is a ***negative lodestar multiplier*** given the extensive work done and posture of the case at the time

it settled.

Under the lodestar method, the Court's analysis begins by calculating Counsel's lodestar—

reasonable hourly rates multiplied by hours reasonably expended in the litigation. *Grissom v. The*

*Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008). After generating the lodestar, the "reasonableness"

is tested by considering the twelve factors set forth in *Barber v. Kimbrell's, Inc.*:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4) the
> attorney's opportunity costs in pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the outset of the litigation; (7) the
> time limitations imposed by the client or circumstances; (8) the amount in
> controversy and the results obtained; (9) the experience, reputation and ability of
> the attorney; (10) the undesirability of the case within the legal community in which
> the suit arose; (11) the nature and length of the professional relationship between
> attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d 216, 226 n.8 (4th Cir. 1978) (the "*Barber* factors").

Importantly, because many of these "considerations are usually subsumed within the initial

calculation of hours reasonably expended at a reasonable hourly rate," the Court need not address

all twelve *Barber* factors independently. *See Brown,* 318 F.R.D. at 577 (quoting *MTU Am. Inc. v.

Swiftships Shipbuilders LLC,* No. 1:14-CV-773 (LMB/TCB), 2015 WL 4139176, at *3 (E.D. Va.

July 8, 2015)). Here, all relevant factors support Class Counsel's requested fee award.

***Class Counsel's Lodestar Reflects the Time, Labor, and Skill Reasonably Required to

Prosecute this Complex Action.*** The Court's analysis begins by calculating counsel's lodestar—

reasonable hourly rates multiplied by hours reasonably expended. *Grissom*, 549 F.3d at 320. To

date, Class Counsel reasonably expended almost 4,000 hours in the Action. Joint Decl. ¶¶ 32, 38.

Class Counsel's hours spent performing the necessary work on behalf of the Settlement

Class includes: investigating and gathering evidence in support of the claims resolved by the

Settlement; drafting the Complaints; litigating contentious motion practice including, but not

limited to motions to dismiss in the South Carolina Action and the Virginia Action, motions for

class certification and de-certification, *Daubert* motions, motion for reconsideration, and two

appeals to the Fourth Circuit; drafting and responding to formal written discovery requests; taking

and defending several depositions; subpoenaing and deposing VISA DPS; engaging an expert to review Defendant's account-level transaction data and analyze potential classwide damages; preparing for trial by compiling witness lists and exhibit lists; two settlement conferences; negotiating and drafting the Agreement with Navy Federal's counsel; moving for and obtaining Preliminary Approval; consulting and overseeing the Settlement Administrator's efforts to provide notice to the Class; and preparing this Motion. *Id.* ¶¶ 2-7, 32. Class Counsel estimates additional hours will be spent addressing any inquiries from Settlement Class Members before and after the Final Approval Hearing, preparing for that hearing and working with the Settlement Administrator after Final Approval to make sure the Settlement Fund is distributed pursuant to the Agreement. *Id.* ¶ 32. In sum, the hours Class Counsel spent litigating this Action reflect the efforts required to achieve such a substantial result.

   ***Class Counsel's Hourly Rates are Reasonable.*** Class Counsel's lodestar calculation results in a multiplier of *negative* 0.65. Joint Decl. ¶ 31. The full lodestar calculation is set forth in the Joint Declaration. *Id.* ¶ 39. An "attorney's actual billing rate provides a starting point for purposes of establishing a prevailing market rate." *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (internal quotation and citation omitted). Each firms' billing rates are detailed in the Joint Declaration. *See* Joint Decl. ¶¶ 49, 55, 57, 61. Class Counsel's hourly rates are reasonable and customary complex litigation rates and have been routinely approved by courts in similar account fee litigation cases throughout the country. *Id.* at ¶ 37; Ex. 1-4 (firm resumes).

   ***The Requested Fee is Reasonable in Light of Class Counsel's Lodestar.*** Plaintiffs seek an award of $2,000,000.00 in attorneys' fees. Multiplying the hours reasonably expended by Class Counsel's reasonable hourly rates, Class Counsel's lodestar is approximately $3,078,907.40. Joint Decl. ¶ 38. And when measured against Class Counsel's requested fee, the current lodestar

multiplier is actually *negative* 0.65, attributed to the fact that the Action had proceeded very close to the Court's consideration of summary judgment motions and possible trial. Thus, the requested fee award falls in line with multipliers approved in other settlements both in the Fourth Circuit and nationally. *See e.g., Brown,* 318 F.R.D. at 578 (finding Class Counsel's requested fee that represented a *negative* multiplier of 0.77 was "comfortably below the range of multipliers other courts have found reasonable"); *cf Halcom v. Genworth Life Ins. Co.*, No. 3:21-cv-19, 2022 WL 2317435, at *13 (E.D. Va. June 28, 2022) (holding class counsel's positive "8.4x multiplier is acceptable and the requested attorney fees are reasonable"); *Skochin v. Genworth Financial, Inc.*, No. 3:19-cv-49, 2020 WL 6708388 (E.D. Va. Nov. 13, 2020) (finding positive 9.05 multiplier not unreasonable in lodestar cross-check analysis); *Peanut Farmers*, 2021 WL 9494033, at *7 (finding 2.92 multiplier was reasonable).

     ***The Remaining Barber Factors Support the Fee Award.*** Class Counsel's requested fee is further reasonable when viewed under the remaining relevant Barber factors. *See* Section V.D.2, *supra*. Because many *Barber* factors are analyzed above, Class Counsel will not repeat it.

     Regarding the fourth factor, Class Counsel's opportunity cost in pressing the instant litigation was the lost opportunity to pursue other matters while pursuing the Action. Joint Decl. ¶ 36. With respect to the tenth factor, while the Action may not be considered undesirable in the legal community, there are few attorneys with the level of expertise as class counsel in similar litigation challenging the account fee assessment practices of financial institutions. *Id.* Lastly, factor eleven supports the Settlement's reasonableness because Class Counsel have had a professional relationship with Plaintiff Morrow since 2020 and with Plaintiffs Hart and Le Flore since 2021. *Id.* Thus, Class Counsel have dedicated their efforts and expenses on behalf of Plaintiffs in pursuit of the Action against Navy Federal for close to four years.

Accordingly, a lodestar cross-check also supports Class Counsel's requested fee award.

### 3. Class Counsel's Reasonably Incurred Costs

The requested Attorneys' Fee and Cost Payment also includes Class Counsel's reasonably incurred costs of approximately $141,058.09. Joint Decl. ¶38. "There is no doubt that costs, if reasonable in nature and amount, may appropriately be reimbursed from the common fund." *In re MicroStrategy, Inc.,* 172 F. Supp. 2d 778, 791 (E.D. Va. 2001) (citation omitted). Here, Class Counsel's unreimbursed costs were reasonably and necessarily incurred in the prosecution and settlement of the Action, a vast majority of which is attributable to Plaintiffs' data expert who extensively analyzed the account-level ISA Fee data Navy Federal produced to create the Settlement Class List and calculate the Settlement Class's damages. *Id.* ¶ 3. Class Counsel's other costs include filing fees and service of process costs, travel expenses, court fees, legal research costs, and reporting services. *Id.* ¶ 26. Each of these costs are deemed "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988) (internal quotation marks omitted); *see e.g., In re Lumber Liquidators Chinese-Manufactured Flooring Products Mktg.,* 2020 WL 5757504, at *11 (E.D. Va. Sept. 4, 2020) (reimbursing costs for "court reporter fees, expert fees, document-reproduction costs, legal research, travel, supplies, and overtime for staff as "reasonable" and "directly related to litigation"). Thus, this Court should consider Class Counsel's litigation costs in approving the Attorneys' Fees and Costs Payment.

### 4. The Requested Service Awards are Reasonable

Service awards are routinely granted "to compensate class representatives for work done on behalf of the class, to make up for financial reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney general." *Galloway,* 2020

WL 7482191, at *6 (quoting *Berry,* 807 F.3d at 613). Plaintiffs request, and Navy Federal does not oppose, Service Awards of $5,000.00 each for their service litigating the Action and securing the Settlement Class benefits despite the financial and reputational risks at stake and the novel and difficult claims pursued. This Court routinely awarded service awards in consumer class actions in similar amounts or higher. *See e.g., Hill-Green v. Experian Information Solutions, Inc.,* No. 3:19cv708, 2023 WL 3681719, at * (E.D. Va. Mar. 2, 2023) ($10,000 service award in consumer class action was "reasonable and within the range of awards granted by courts in this and other circuits"); *In re Capital One,* 2022 WL 17176495, at *5 ($5,000 awards for each class representative who "assisted Class counsel with investigations and numerous discovery requests, participated in full-day depositions, and reviewed and approved the Settlement Agreement"); *Manuel,* 2016 WL 1070819, at *6 (approving a $10,000 service award where plaintiff "took an active role by participating in discovery and testifying in a deposition").

Here, the Court should similarly approve $5,000 Service Awards in recognition of the Class Representatives' time and effort spent, and the results obtained for the absent Settlement Class Members. Plaintiffs actively participated in the Action by gathering and producing key account documents, reviewing the Complaints, sitting for depositions, assisting in written discovery, submitting declarations in support of class certification, regularly communicating with Class Counsel, and reviewing and approving the Agreement. Joint Decl. ¶ 24. Further, each incurred a reputational risk by putting their names on a public complaint and bore a financial burden out of proportion to their individual stake in the matter. As such, Plaintiffs should be commended for taking the initiative to protect the interests of Navy Federal Accountholders—without their efforts, the Settlement Class would receive nothing.

## VI.    CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) grant Final Approval of the Settlement; (2) affirm certification of the Settlement Class for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3); (3) confirm the appointment of Plaintiffs as Class Representatives; (4) confirm the appointment as Class Counsel the law firms and attorneys previously identified in paragraph 9 of the Preliminary Approval Order; (5) award Service Awards to the Class Representatives in the amounts of **$5,000.00** each; (6) award Class Counsel **$2,000,000.00** for attorneys' fees and costs; (7) overrule timely objections, if any; and (8) enter final judgment dismissing the Action and reserving jurisdiction over Settlement implementation. Plaintiffs attach hereto as ***Exhibit D*** a proposed Final Approval Order and Final Judgment.

Dated: June 9, 2024

Respectfully submitted,

/s/ *Heather Whitaker Goldstein*
Heather Whitaker Goldstein (VSB 41480)
David M. Wilkerson**
**THE VAN WINKLE LAW FIRM**
11 N. Market Street
Asheville, North Carolina 28801
Telephone: 828-844-7169
hgoldstein@vwlawfirm.com
dwilkerson@vwlawfirm.com

Jeffrey Ostrow**
Jonathan Streisfeld**
Daniel Tropin**
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Telephone: 954-525-4100
ostrow@kolawyers.com

streisfeld@kolawyers.com
tropin@kolawyers.com

Sophia Goren Gold**
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: 202-350-4783
sgold@kalielgold.com

Todd Carpenter***
(Eddie) Jae K. Kim**
**LYNCH CARPENTER LLP**
1350 Columbia Street. Suite 603
San Diego, CA 92101
Telephone: 619-762-1910
tcarpenter@carlsonlynch.com
ekim@lcllp.com
*Counsel for Plaintiffs and the Putative
Classes*

*Admitted *pro hac vice* in No. 21-CV-722.
**Admitted *pro hac vice* in No. 21-CV-722
and No. 22-CV-844.
***Application for admission *pro hac vice*
 Forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 9th day of June, 2024, a copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system.

<u>/s/   Heather Whitaker Goldstein   </u>